679 So.2d 569 (1996)
Kevin M. SISK, Plaintiff-Appellee,
v.
MARTIN SPECIALTY COATINGS, Defendant-Appellant.
No. 28,592-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
Writ Denied November 22, 1996.
*570 Eskridge E. Smith, Jr., Bossier City, for Appellant.
James D. Caldwell, Shreveport, for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
*571 BROWN, Judge.
Defendants, Martin Specialty Coatings, Inc. ("Martin") and its insurer, Louisiana Commerce & Trade Association, appeal the decision of a workers' compensation hearing officer ("WCHO") which found that plaintiff, Kevin Sisk, was temporarily totally disabled by a workplace accident. We reverse.

FACTS
Kevin Sisk began working for Martin as a drywall finisher in October 1992. At the time he was hired, plaintiff informed his employer of previous back injuries which resulted in a disc fusion at the L5-S1 level in October 1991, and a discectomy in January 1992.
On Friday, July 2, 1993, plaintiff was working at a job site where he claims that he suffered sharp pain in his back followed by leg spasms while lifting two-by-twelve boards used to erect scaffolding. Plaintiff told a job foreman that his back hurt and performed lighter duties for the remainder of the day. When the pain failed to subside over the weekend, plaintiff visited an orthopedic specialist. On July 6, Dr. Don Joffrion concluded that plaintiff suffered from lumbar strain and advised him not to return to work until after a follow-up visit. At a scheduled appointment on July 12, Dr. Joffrion confirmed his diagnosis of lumbar strain and advised plaintiff that he could return to work on July 17.
After leaving Dr. Joffrion's office, plaintiff delivered a handwritten note to his employer stating that he had been injured in early 1993 while removing stilts worn to reach ceilings for the installation and finishing of sheetrock. The letter concluded with a request that compensation benefits be commenced as of July 12, 1993.
On July 16, Sisk visited Shreveport neurosurgeon Dr. Donald Smith. Dr. Smith concluded that plaintiff did not suffer from active radiculitis and listed his impression of plaintiff's complaints as "low back pain" and "post-operative status lumbar disc excision multiple." Dr. Smith did not admonish Sisk against working but merely suggested that he find some less strenuous form of labor.
Shortly after his visit with Dr. Smith, Sisk moved to his parents' home in Lawton, Oklahoma. Sisk gave a statement to an adjuster for Martin's compensation insurer, who then set up an appointment for Sisk to see an Oklahoma orthopedic specialist, Dr. J. Patrick Evans.
Sisk saw Dr. Evans on October 11, 1993 and related a history of two separate workplace accidents occurring when he removed his stilts in January and February of 1993. Sisk claimed to have worked in constant pain after these incidents until July when the pain became too great to bear. Sisk complained to Dr. Evans of neck and back pain, numbness in his legs and shoulders, occasional numbness in his arms, pain in both legs, and "needles" in his heels.
While noting his impression that Sisk's reported symptoms were related more to his prior injury and surgeries, Dr. Smith concluded that Sisk suffered from a soft-tissue injury with a rather mild strain of the lumbar spine. Based upon the history related by plaintiff, Dr. Smith concluded that Sisk had been temporarily totally disabled since July 6, 1993. Dr. Smith recommended MRI testing to determine whether there was any nerve compression.
On February 3, 1994, plaintiff underwent MRI testing which showed a bulging disc in his cervical spine at the C5-6 level which impinged upon the spinal cord. Sisk's cervical spine was straightened, suggesting the presence of muscle spasm. Plaintiff also had extensive scar formation at the L5-S1 level of his lumbar spine, with slight subluxation and a desiccated disc at this level.
Martin steadfastly refused to recognize the diagnosed disability as being the result of any workplace accident and refused to pay related benefits. Based on the totality of the evidence, the Workers' Compensation Hearing Officer concluded that Sisk proved that he had suffered a workplace injury on July 2, 1993 and that he had been temporarily totally disabled as a result. Weekly benefits of $266.67 were awarded, backdated to July 3, 1993, and continuing until a change occurs in Sisk's condition. Martin was ordered to pay all related medical expenses and was assessed *572 with statutory penalties of 12% on all sums due and attorney fees fixed at $7,500. Martin and its compensation insurer appeal asserting error in the hearing officer's findings and the award of benefits, penalties, and fees.

DISCUSSION
An employee is entitled to receive benefits for a personal injury by an accident arising out of and in the course of his employment. La.R.S. 23:1031. The term accident is defined as an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La.R.S. 23:1021(1).
Although procedural rules are construed liberally in favor of workers' compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. The testimony as a whole must show that more probable than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities evenly balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
A worker's testimony alone may be sufficient to discharge his burden of proof upon the satisfaction of two elements: (1) no other evidence discredits or casts serious doubts upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. In determining whether the worker has discharged his burden of proof, the hearing officer should accept as true a witness's uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979).
A hearing officer's conclusions as to whether the worker's testimony is credible and whether the worker has discharged his burden of proof are factual determinations not to be disturbed on review absent a showing of manifest error. Gonzales v. Babco Farm, Inc., 535 So.2d 822 (La.App. 2d Cir. 1988), writ denied, 536 So.2d 1200 (La.1988). Where objective evidence so contradicts an employee's testimony, or the testimony is so internally inconsistent or implausible on its face that a reasonable fact finder would discredit the story, a reviewing court may well find manifest error or clear wrongness even in a credibility determination. Rosell v. ESCO, 549 So.2d 840 (La.1989).
With the foregoing legal precepts in mind, we consider the details surrounding plaintiff's claim. We begin with a review of the various versions of the purported accident.
In his form petition, plaintiff describes his accident as resulting from "carrying 2 × 12 scaffold board up 24 ft. extension ladder. Lifted it over my head hurting my back and making my legs spasm." Plaintiff indicated that he reported his accident to his foreman, Dale Saintignan and stated that the accident was witnessed by a co-worker, William Wilkinson.
Dale Saintignan testified that he was acting as plaintiff's supervisor on July 2, 1993. Saintignan, however, did not see an accident and testified that he could not recall plaintiff reporting an accident. Saintignan was adamant that plaintiff never indicated that he had injured his back. He recalled plaintiff complaining that his back hurt, but stressed that such complaints were commonplace among employees performing this type of work. Saintignan testified that defendant's company policy required foremen to complete an accident report anytime an employee complains of an accident or injury and to notify a supervisor of the incident. Because Sisk never indicated that he had sustained an injury, Saintignan never completed a report or contacted a supervisor. Supervisor Albert Martin testified that neither Sisk nor Saintignan reported the occurrence of a job-related accident on July 2, 1993.
Although plaintiff indicated that the scaffolding incident was witnessed by William *573 Wilkinson, a fellow Martin Specialty Coating employee, Wilkinson was not called as a witness to bolster Sisk's claim. Moreover, Steve Martin, a part-owner of the defendant company, testified that defendant had never employed anyone named William Wilkinson.
Plaintiff described his "accident" differently when he officially reported it to his employer on July 12, 1993. In a handwritten note addressed simply to Martin Specialty Coatings, plaintiff stated in part the following:
I Kevin Sisk was injured accidentally while working at Highland Hospital. While working under the supervision of Wayne Wheats (sic).
I was taking off the stilts I was using to work on a high ceiling. Larry Weaver witnessed this as I took one stilt off and then stepped to the ground jolting my back. I informed Wayne my back was hurting. Employer has dates on which I was working at Highland.
The note concludes with a request that benefits be commenced as of July 12 and that defendant complete an employer's accident report.
We find it relevant that Sisk hand delivered this note immediately following a doctor's visit in which he was released to return to work. It is likewise worthy to note that plaintiff again failed to elicit corroborating testimony from the purported eyewitness to the accident, Larry Weaver.
Huey Wayne Weeks testified that he was the foreman on the Highland Hospital job performed in January and February 1993. Weeks testified that plaintiff never informed him of a job-related accident or injury resulting from the removal of stilts. Weeks did recall plaintiff's complaints of back pain, but noted that he was aware of plaintiff's predisposition to back pain and had heard Sisk's complaints of back pain on a regular basis. Sisk gave no indication that he had been injured and no accident report was completed.
A third explanation of Sisk's injuries was recorded in a statement given to Ray Cedor, an adjuster hired by Martin's compensation insurer. Sisk again stated that he hurt his back while removing stilts at the Highland Hospital job in January or February of 1993. He stated that there were three eyewitnesses to the stilt removal accident, none of whom worked for defendant. One of these witnesses was Larry Weaver. Sisk went on to state, however, that none of these witnesses would have suspected anything since he said nothing about the pain in his back and instead went about his duties. Plaintiff stated that he did not seek medical attention because he presumed the prescribed treatment would involve extended bed rest and absences from work that he could not afford. Sisk went on to say that the stilts related accident occurred on a Friday; however, he waited to inform his foreman, Wayne Weeks, until the following Monday. The pain caused by this accident lasted approximately one month and subsided without medical treatment.
Sisk then told Cedor that he injured his back again at work while climbing a ladder at the LSU-S library on a Friday afternoon in April 1993. Sisk claimed that he heard his back pop and then suffered leg spasms. He stated further that the entire work crew witnessed this accident. Immediately thereafter, Sisk left work and went to a nearby hospital emergency room. The treating physician ordered Sisk to remain off of work for two to three days. Sisk stated that he rested over the weekend and returned to work on the following Monday.
Finally, Sisk described for Cedor the scaffolding incident, stating that he informed Saintignan of the accident and his injury before deciding to finish the workday. Sisk concluded by stating that he considered the stilts related incident as the moment he first injured himself while working for defendant.
Although the April workplace accident was allegedly witnessed by several people, plaintiff again called no eyewitnesses to testify at the hearing. Sisk did report to a hospital emergency room on April 16, 1993 complaining of spasms. The treating physician's report, however, indicated that plaintiff was alert and oriented, yet having spasms or complaining of spasms which appeared to be voluntarily induced. The doctor specifically *574 noted that "patient rests quietly when observed surreptitiously."
Plaintiff also related his accident history to treating physicians who recorded his explanation of the events surrounding his injury. Dr. Donald Smith recorded the order of plaintiff's accidents as apparently commencing with the April 1993 ladder accident that led to Sisk's trip to an emergency room with complaints of leg spasms. Dr. Smith recorded that plaintiff returned to work and, in July 1993, "re-injured his back when he stepped down from stilts that he was wearing causing a twisting injury to his back."
Three months later, Dr. Patrick Evans recorded plaintiff's accident history as commencing in January 1993 with the stilts removal incident. Dr. Evans recorded that plaintiff related a second accident of a similar nature occurring a "month or so later." Sisk stated that he continued to work in pain until July when, while lifting heavy boards, the pain became too great for him to continue working.
Plaintiff has conveyed his accident history to the office of workers' compensation, his employer, various health care providers, and an insurance adjuster. In each instance, the order of events is subject to significant variation. Plaintiff claims to have reported these alleged accidents to his superiors; however, those responsible for recording and reporting such events testified that plaintiff never informed them that he had been involved in an accident or that he had been injured.
Martin's formal program for addressing employee accidents and injuries was never triggered. Had plaintiff made a formal accident claim to Martin, company policy provided for immediate treatment at a nearby outpatient program. Company policy also required drug testing following any reported accident. Plaintiff chose to pursue medical assistance on his own, thereby bypassing the required testing. We find it relevant that some of plaintiff's medical records suggest that he may have had a drinking problem. Indeed, plaintiff specifically asked to be allowed a grace period from Martin's employee random drug testing when that policy was first implemented on May 1, 1993. Employee intoxication can be a defense to employer liability for compensation benefits. La.R.S. 23:1081(1)(b).
Plaintiff testified that his accidents were witnessed by co-employees of Martin Specialty Company and/or the employees of other contractors. And yet, one alleged co-worker eyewitness apparently never worked for defendant. No eyewitnesses were called to support plaintiff's claims.
There were also discrepancies in the nature of the injuries plaintiff reported to the doctors who treated him following his departure from employment with Martin. Doctors Joffrion and Smith, who treated plaintiff from July 6 through July 16, 1993, each recorded complaints only of lower back pain and left leg pain or spasms. Plaintiff testified, however, that he informed both doctors that he suffered neck pain as well and suggested that the two physicians simply failed to record his complaint. Three months later, plaintiff's complaints of neck pain are recorded for the first time by Dr. Evans.
The doctors' diagnoses are also noteworthy. Dr. Joffrion diagnosed plaintiff on July 6 and July 12, 1993 as suffering from low back strain. Plaintiff was asked at trial if he suffered any back problems following the second of his two prior back surgeries performed in January 1992. Plaintiff's response was "[n]ot that I can recall. That's why I went back to work." Plaintiff was then asked about a trip he made to an Oklahoma emergency room in July 1992 where he was diagnosed as suffering from lumbar strain and a possible herniated disc. Plaintiff's responses to questioning about this emergency room visit and the diagnosis rendered there were evasive and uncooperative. Interestingly, the lumbar strain diagnosis rendered in July 1992, before plaintiff ever worked for defendant, was the same diagnosis rendered in July 1993 following defendant's series of alleged workplace accidents.
Dr. Smith's impression of plaintiff's complaints on July 16 was recorded as "[l]ow back pain. Post operative status lumbar disc excision multiple." Dr. Evans listed his impression of plaintiff's condition as [s]tatus post previous lumbar laminectomy and attempted fusion for pre-existing spondylolisthesis *575 L5/S1, lumbar strain super-imposed upon the pre-existing changes, and functional exaggeration of complaints. Both doctors felt that plaintiff's complaints resulted in part from his two prior back injuries and the delicate status of his back following two invasive surgeries. Dr. Evans summed up his impression by stating that "I think most of the current symptoms are more related to his prior injury and surgical treatment than to the injury he describes as having occurred in January and February of 1993." Dr. Evans also diagnosed lumbar strain like the diagnosis rendered during plaintiff's July 1992 emergency room visit. Dr. Evans noted that plaintiff voluntarily avoided full muscle function and exaggerated his complaints. A similar observation was made by a treating physician during plaintiff's April 1993 emergency room visit.
Plaintiff has recounted his history of work place "accidents" with a lack of consistency and an imprecision of detail sufficient to cast doubts upon his credibility. The contrary testimony of his supervisors and the absence of eyewitness testimony, where such witnesses supposedly existed, only serve to cast further suspicion on the reliability of plaintiff's testimony.
Moreover, the medical evidence introduced at the hearing did not bolster plaintiff's claim. There is no contemporaneous, objective medical corroboration of an injury following the alleged stilts incident because plaintiff opted to forego medical treatment at the time the incident occurred. Hospital records related to the ladder incident indicate that the treating physician doubted the truthfulness of plaintiff's complaints. Doctors of plaintiff's own choosing with access to Sisk's full medical history examined him shortly after the scaffolding incident. Doctors Joffrion and Smith both released plaintiff to return to work with only the latter admonishing plaintiff to find lighter duties to perform. Dr. Smith noted that plaintiff's condition was commensurate with his prior surgical history. Dr. Evans went so far as to state clearly his belief that plaintiff's complaints were more likely related to his prior surgeries than to the accidents he related.
Subsequent MRI testing confirmed that plaintiff does indeed continue to suffer from lumbar and cervical problems. While we are sympathetic to his plight, we cannot agree with the WCHO that plaintiff has carried his burden of persuasion. Plaintiff's testimony concerning his work place accidents was suspicious and sufficiently contradicted to preclude his testimony alone from satisfying the burden of proof. The medical evidence was equivocal and equally supportive of opposing theories that plaintiff may have been injured on the job, or that plaintiff was prone to exaggerating his complaints of injury while the symptoms presented were apt to be the continued side effects of or continual degeneration from two prior back surgeries. Plaintiff has failed to adequately prove the existence of a work place accident bearing a direct causal relationship to his injuries.

CONCLUSION
Plaintiff did not satisfy the applicable burden of persuasion relative to his claims of various work place accidents and ensuing injuries. The findings of the workers' compensation hearing officer are therefore manifestly erroneous. Accordingly, the award of benefits and assessment of attorney fees and penalties in favor of plaintiff is reversed.
REVERSED AND RENDERED.