734 So.2d 848 (1999)
Irma KELLEY, Plaintiff-Appellee,
v.
STONE CONTAINER CORPORATION, Defendant-Appellant,
No. 31790-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*849 John C. Blake, Jonesboro, Counsel for Appellant.
Bobby Culpepper, Jonesboro, Counsel for Appellee.
Before BROWN, STEWART and DREW, JJ.
STEWART, J.
The sole issue presented in this appeal by Stone Container Corporation ("Stone") is whether the worker's compensation hearing officer ("WCHO") erred in finding that Irma Kelley proved, by a preponderance of the evidence, that she was injured in a work-related accident and suffered a disability entitling her to benefits. For the reasons discussed herein, we reverse the WCHO's ruling.

FACTS
Irma Kelley filed a disputed claim for worker's compensation benefits on September 18, 1996, alleging that she injured her back on September 28, 1995, while employed at Stone as the sixth hand on the Number 5 paper machine. Ms. Kelley claimed the injury occurred at approximately 2:30 p.m., when her back "gave way" while she was using a pry bar to separate two rolls of paper that were stuck together. According to Ms. Kelley, the incident occurred near the end of her shift and was not witnessed by co-employees. Ms. Kelley testified that she told a co-employee, Eddie Mills, that she injured her back. Mills denied that Ms. Kelley said anything to him about an injury. Although Ms. Kelly knew that Stone required its employees to report injuries to a supervisor, she did not report the injury. Ms. Kelley was able to complete her shift and none of her co-employees noticed anything suggesting that Ms. Kelly was injured or in pain.
Because of a long weekend, Ms. Kelley was not expected back at work until Monday night. Ms. Kelley testified that her injury worsened over the weekend. However, she was able to travel to Natchitoches *850 on Saturday with her husband, Steve Kelley. On Sunday, a second incident affecting Ms. Kelley's back occurred. While helping to care for her elderly parents, Ms. Kelley bent down to lift her father who had fallen in the bathtub. She testified that she did not lift him due to her back pain.
On Monday, October 2, 1995, Ms. Kelley sought relief from Dr. Jeff Brockman, a chiropractor. Medical records from Brockman Chiropractic Clinic indicate that Ms. Kelley was injured at work. Because the pain persisted, Ms. Kelley was unable to work Monday night as scheduled, so her husband called her supervisor, Tom Goss, to report that she would not be at work. Mr. Kelley told Goss that Ms. Kelley injured her back while lifting her father from the bathtub. The next day Ms. Kelley sought treatment from Dean L. Kirby, M.D., and thereafter, began physical therapy. Dr. Kirby's records indicate that Ms. Kelley developed back pain while lifting something at work and that her pain worsened when she attempted to lift her invalid father. Physical therapy records from October 3, 1995 indicate the same. Medical records also indicate that Ms. Kelley was treated for lumbar strain and sciatica in July 1995. Ms. Kelley explained that she injured her back in July 1995 while lifting a wheel barrel at work and that she did not report the injury.
After seeing Dr. Kirby, Ms. Kelley and her husband went to Stone and filed a claim with Aetna, the group insurer. The Kelleys claim that Mr. Kelley spoke with Theresa Boddie, a nurse employed by Stone, who told them that it was too late to file a worker's compensation claim and advised them to say that an accident occurred so that the group insurance would provide coverage. Theresa Boddie testified that the Kelleys came in together and asked for disability papers and a leave of absence form and that they never mentioned that Ms. Kelley was injured on the job. The claim form indicates that Ms. Kelley's injury is related to an accident, rather than to her employment; that the accident occurred on September 28, 1995; and that the accident occurred when she "picked up" her father out of the tub. Thereafter, Ms. Kelley began receiving weekly disability benefits in the amount of $175 from Aetna.
In November 1995, Ms. Kelley underwent a translaminar removal of a herniated nucleus pulposus at the L5-S1 level on the right. Approximately four months after sustaining the injury, the Kelleys contacted Stone about changing the group insurance claim to a worker's compensation claim. Marlene McConathy, a nurse employed by Stone, testified that Steve Kelley called on January 29, 1996, to request the claim change. According to McConathy, Mr. Kelley explained that bills were piling up and Aetna was not paying all of the bills and was not timely with the checks. Ms. Kelley testified that her main goal in changing the claim to worker's compensation was to get all of her hospital bills paid. On January 30, 1996, the Kelleys met with Charles Gilbert and Wade McBride, both supervisors at Stone, to discuss changing the claim. Ms. Kelley explained that she was actually injured at work and requested worker's compensation. She also expressed concern about her employment with Stone. No resolution was reached, and Ms. Kelley filed a claim for compensation in September 1996.
At the close of the hearing in March 1998, the WCHO ruled in Ms. Kelley's favor and awarded her temporary total disability benefits from September 28, 1995 through August 15, 1997, and ordered Stone to pay all outstanding medical bills and to reimburse Ms. Kelley for all medical expenses paid by her. Stone now appeals this ruling and urges that the WCHO erred in finding that Ms. Kelley carried her burden of proving that she was injured in an accident in the course and scope of her employment.

DISCUSSION
An employer is required to provide compensation to an employee injured in an *851 accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An accident, for purposes of worker's compensation, is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).
The burden is on the claimant in a worker's compensation action to establish the occurrence of a work-related accident by a preponderance of the evidence. The burden of proof is not relaxed despite liberal construction of the worker's compensation statute generally afforded the worker. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992); Sisk v. Martin Specialty Coatings, 28,592 (La.App. 2nd Cir. 8/21/96), 679 So.2d 569, review denied, 96-2328 (La.11/22/96), 683 So.2d 281. For the claimant to satisfy his burden, the testimony in its entirety must show that it is more probable than not that a work-related accident occurred and that the accident had a causal relation to the disability. Sisk v. Martin Specialty Coatings, supra. Where the evidence leaves the probabilities evenly balanced or shows only a possibility of a causative accident or leaves it to speculation or conjecture, then the claimants case must fail. Qualls v. Stone Container Corp., 29,794 (La.App. 2nd Cir. 9/24/97), 699 So.2d 1137, review denied, 97-2929 (La.2/6/98), 709 So.2d 736, reconsideration denied, 97-2929 (La.3/27/98), 716 So.2d 370; Sisk v. Martin Specialty Coatings, supra; Harris v. Halliburton Co., 501 So.2d 985 (La.App. 2nd Cir.1987).
In ruling on this matter, the WCHO found that the evidence set forth reasons to rule in favor of Ms. Kelley as well as reasons to rule in favor of Stone. Because the scales were even, the WCHO determined that the rule of liberal construction required her to weigh the evidence in favor of the plaintiff, Ms. Kelley. Therefore, the WCHO found that Ms. Kelley was involved in a work-related accident on September 28, 1995, which resulted in a disabling injury.
This determination by the WCHO is in direct conflict with the legal standards applicable to Ms. Kelley's burden of proof in this matter. Once the WCHO found that the scales were even, the WCHO was required to deny Ms. Kelley's claim. The WCHO's application of the rule of liberal construction to tip the scales in Ms. Kelley's favor after determining that the scales were evenly balanced constitutes an error of law in the application of the burden of proof. Where legal error interdicts the fact-finding process, the manifest error standard of review no longer applies, and the appellate court should make its own de novo review of the record and determine whether a preponderance of the evidence is satisfied. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742. Stated another way, when a lower court commits a reversible error of law, the reviewing court must, whenever possible, review the facts de novo from the entire record and render a judgment on the merits. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983); We Sell Used Cars, Inc. v. United National Ins. Co., 30,671 (La.App. 2nd Cir. 6/24/98), 715 So.2d 656; Menard v. Winn Dixie Louisiana, Inc., 93,1497 (La.App. 3rd Cir. 6/1/94), 640 So.2d 775.
Because we find that the WCHO committed legal error through her erroneous interpretation and application of the law relating to the burden of proof, the WCHO's ruling is not entitled to deferential consideration pursuant to the manifest error standard of review. Therefore, we will proceed with a de novo review of the record to determine whether Ms. Kelley proved the occurrence of a work-related accident by a preponderance of the evidence.
A worker's testimony alone may be sufficient to satisfy the burden of proof, *852 provided no other evidence discredits or casts serious doubt upon the worker's version of the incident and circumstances following the alleged incident corroborate the worker's testimony. Corroboration may include both medical evidence and testimony of co-employees, spouses, or friends. Bruno v. Harbert International Inc., supra; Qualls v. Stone Container Corp., supra; Jones v. AT & T, 28,059 (La.App. 2nd Cir. 2/28/96), 669 So.2d 696. The worker's burden of proof requires factual evidence from which it may be concluded that it is more probable than not that an accident occurred and caused disability. Prim v. City of Shreveport, 297 So.2d 421 (La. 1974); Harris v. Halliburton Co., supra.
Ms. Kelley's claim that she injured her back in a work-related accident on September 28, 1995 is corroborated by both the testimony of Mr. Kelley and medical records introduced into evidence. Mr. Kelley testified that when he returned home from work on the date of the accident, he could tell that something was wrong with Ms. Kelley because she was not moving as fast as usual. Upon questioning by Mr. Kelley, Ms. Kelley finally told him that she thought she hurt herself at work. Medical records from the chiropractic clinic, the physical therapist, and Dr. Kirby all mention that Ms. Kelley's back pain began on September 28, 1995, after a work-related accident. Also, the testimony of Bonita Kennedy, Ms. Kelley's sister, corroborates Ms. Kelley's version of the incident involving her father. Ms. Kennedy testified that Ms. Kelley stooped to lift their father but was unable to actually lift him due to the back pain.
While the record contains evidence corroborating Ms. Kelley's claim, the record also includes evidence which discredits her claim. None of Ms. Kelley's co-employees noticed anything to suggest that Ms. Kelley was injured or in pain. Although Ms. Kelley testified that she told Eddie Mills that she injured herself, Mills denied this and testified that he did not observe anything to suggest that Ms. Kelley injured herself. Another co-employee, Arlee McConathy, specifically recalled a conversation with Ms. Kelley, who was sitting down prior to shift change at about 2:30 p.m., during which Ms. Kelley discussed going to Natchitoches with her husband that weekend but did not mention any accident or injury.
Ms. Kelley admitted that she knew Stone required employees to report work-related accidents or injuries to their supervisors. However, she did not report any accident or injury to a supervisor until January 1996, after having filed a claim with the group insurer, after having received disability payments and medical benefits through the group insurer, and after having become dissatisfied with the coverage or service provided by the group insurer. Even when Mr. Kelley called Ms. Kelley's supervisor, Tom Goss, to report that she would not be able to work, no mention was made of a work-related accident or injury. Ms. Kelley again made no attempt to report a work-related accident or injury to a supervisor when she and her husband went to Stone to file a claim after seeking medical attention for her injury. Instead, the Kelley's spoke to Theresa Boddie, a nurse, and filed a claim with Stone's group insurer. The Kelleys testified that Mr. Kelley spoke to Ms. Boddie who told him that it was too late to file a worker's compensation claim and advised him to have Ms. Kelley file a group insurance claim. However, Ms. Boddie testified that the Kelleys requested group insurance forms and never mentioned that a work-related accident occurred. Despite Ms. Kelley's attempts to elicit testimony suggesting that Stone discouraged the filing of worker's compensation claims, no other evidence suggests that anyone at Stone prevented or discouraged Ms. Kelley from reporting her injury to a supervisor as required by Stone's policy or from seeking worker's compensation. Mr. Kelley testified that after meeting with Theresa Boddie, he did not speak with anyone else about filing a worker's compensation claim. *853 However, Marlene McConathy, a nurse at Stone, testified that Mr. Kelley called on January 29, 1996, to request transfer of Ms. Kelley's group insurance claim to a worker's compensation claim. According to McConathy, Mr. Kelley stated that Ms. Kelley was actually injured at work and explained that the bills were piling up and Aetna was not paying timely or sending the checks regularly.
The record in this matter presents an extremely close call as to whether Ms. Kelley proved by a preponderance of the evidence that she was injured in a work-related accident. However, it is Ms. Kelley's own actions which discredit and cast doubt on her claim. This is not a case in which a worker sustains a work-related injury, but not realizing the full extent of the injury and its cause, fails to report it until later and continues working, despite the pain, while trying to resolve the injury. See Wackenhut Corrections Corp. v. Bradley, 96,796 (La.App. 3rd Cir. 12/26/96), 685 So.2d 661. Here, Ms. Kelley claimed that she sustained a work-related injury that worsened over the long weekend. She sought medical treatment within a few days of the alleged work-related injury, and immediately upon seeking medical treatment, filed a group insurance claim which stated that she injured herself while lifting her father from the tub. Thereafter, Ms. Kelley derived the benefits of the group insurance claim until deciding that its coverage was not sufficient, at which point Ms. Kelley then met with Stone representatives to retract her former claim that she was injured in an accident and admit that she was really injured at work.
Considering all of the circumstances of this case, we cannot say that Ms. Kelley proved by a preponderance of the evidence that an employment accident occurred. The probability that a work-related accident occurred does not rise above an equal balance in light of all of the evidence presented, particularly the contradictory versions of how the injury occurred as related by Ms. Kelley and her husband to treating physicians and to Stone. Upon careful consideration of this record, we find, as did the WCHO, the probabilities that Ms. Kelley was injured in a work-related accident no greater than evenly balanced. Application of the appropriate burden of proof mandates reversal of the WCHO's ruling, and consequently, the denial of Ms. Kelley's claim for worker's compensation benefits.

DECREE
For the reasons discussed, we reverse the WCHO's ruling and deny Ms. Kelley's claim for worker's compensation benefits. Costs of this appeal are assessed against the appellee, Irma Kelley.
REVERSED.
BROWN, J., concurs with written reasons.
BROWN, J., concurring,
I question the propriety of a de novo review by this court. Although quantifying the evidence as even, the WCJ chose to believe the claimant's testimony. In particularly:
The medical reports clearly say, `The patient is employed at the paper mill and she was lifting a roll that was stuck together and she had immediate onset of back pain.' That report is dated October 3, 1995, a few days after the injury. It goes on to say, `This continued to progress in severity. Also on Sunday when she went to lift her dad out of the tub, the pain increased significantly.' I think she attempted to lift her father, but I also think that the injury that she received at the job made her more susceptible to the back injury. Therefore, there is every indication that the claimant attempted to report the injury but was persuaded not to. She went to the nurse for guidance on what to do as a result of a work-related injury, instead, she was given a disability form. Her credibility concerning the way the accident happened is supported *854 in the medical reports. Clearly, the pain increased after the effort to lift her father, however as I said, I think that as per the medical testimony the onset for the symptoms occurred the previous Thursday. (Emphasis added).
Thus, I would apply a manifest error standard of review to determine whether an on-the-job accident occurred. Accepting the facts as stated in the majority opinion, I would conclude that the WCJ could not have found that plaintiff met her burden of proof.