818 So.2d 1042 (2002)
Sherri BLAIR
v.
WAL-MART STORES, INC.
No. 2001-CA-2211.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 2002.
Rehearing Denied June 28, 2002.
*1043 Joseph F. LaHatte, Jr., Roderick Alvendia, Ernest J. Bauer, Jr., Kevin M. Steel, Law Office of Joseph F. LaHatte, Jr., New Orleans, LA, for Plaintiff/Appellee.
*1044 Charles Martin Kreamer, Sr., Allen & Gooch, Lafayette, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge and PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, Jr.).
MURRAY, Judge.
This is a workers' compensation case. From a judgment in favor of the plaintiff, Sherri Blair, awarding temporary total disability (TTD) benefits from September 5, 1999 forward and unpaid medical expenses, the defendant, Wal-Mart Stores, Inc., appeals. We affirm the trial court's finding that Ms. Blair established a work-related accident, but we limit the award of TTD benefits to a two-month period, reverse the award of medical expenses, and remand to consider plaintiff's entitlement to supplemental earnings benefits (SEB).

FACTUAL AND PROCEDURAL BACKGROUND
On September 4, 1999, Ms. Blair, a thirty-eight year old stock clerk/sales associate for Wal-Mart, allegedly injured her back lifting a cardboard box. At the time, Ms. Blair was engaged in "zoning", i.e., the routine restocking and straightening up of shelves, pulling merchandise forward and upkeep of a particular section of the store. As she was bending over to pick up a box, Ms. Blair felt a pull in her back. At first it was not that strong, but when she tried to continue working she felt her back tighten. Ms. Blair therefore went to her supervisor, Norris Chaisson, Jr., and obtained his permission to take a break. When she sat down to take a break, however, the pain increased. She returned to Mr. Chaisson and obtained his permission to go home.
Although the parties dispute what Ms. Blair told Mr. Chaisson, it is undisputed that he asked her at least twice, if not three times, if she wanted to complete an accident report and that she declined all his requests. Explaining her reason for declining, she testified that she believed if she went home and soaked she would be able to return the next day; she stated: "I was thinking I would be back tomorrow. I wasn't thinking it would be so severe that I wouldn't be able to move the next day; so I clocked out and I had a friend pick me up." The next morning, Ms. Blair testified, she could not move because the pain was so severe. She had her children call an ambulance to take her to the hospital. When she presented at the emergency room, she complained of "low back pain secondary to lifting heavy boxes at work" and gave a history of having "a similar episode in the past" for which she was treated and having "good relief until yesterday when she lifted boxes."
Ms. Blair testified that her two treating physicians were Dr. Kenneth Wiley and Dr. Roy Marrero. Dr. Wiley treated her during her six-day stay in the hospital. On September 11, 1999, he discharged her from the hospital with the following final diagnoses: (1) lumbar degenerative disc disease, (2) bilateral sacroiliitis, (3) herniated discs at L4-5 and L5-S1, and (4) urinary tract infection.
On September 21, 1999, Dr. Marrero certified that Ms. Blair was unable to return to work for an undetermined period of time and that she was disabled. Dr. Marrero also referred her to a back specialist at LSU Orthopedics. However, Ms. Blair testified that she was turned away when she went for her appointment because that specialist did not accept Medicaid. Thereafter, Ms. Blair saw Dr. Wiley several times, and he prescribed various pain medications.
As of the time of her deposition, July 2000, Ms. Blair testified that she was still *1045 taking prescription pain medication. As of the time of trial, June 2001, however, she testified that her Medicaid insurance had lapsed, that she was not seeing any physician, and that she takes over the counter medicine, like Tylenol, for her pain. She further testified that Medicaid paid all of her past medical expenses.
At least once during her hospital stay, Ms. Blair spoke with Melanie Falgout, Wal-Mart's personnel manager, regarding her inability to return to work. She testified that she told Ms. Falgout that she injured her back at work. Ms. Blair also had her mother, Yvonne Borden, call her supervisor, Mr. Chaisson, while she was in the hospital. Ms. Borden testified that she told Mr. Chaisson that her daughter was in the hospital because something had happened the day before on the job and that she was brought to the hospital because she was unable to move. Ms. Borden testified that Mr. Chaisson never mentioned anything to her about filling out an accident report.
Although Mr. Chaisson admitted on cross-examination that Ms. Borden called him, he denied that she told him Ms. Blair was injured at work. Instead, he testified that Ms.Borden merely told him that Ms. Blair would not be in and that he was unsure why she was in the hospital. Asked what would have been done if Ms. Blair had told him or another member of management that she was hurt at work, Mr. Chaisson responded that the first thing they would have done would have been to complete an accident report.
Wal-Mart was first formally notified of Ms. Blair's claim of a work-related accident when they received a letter of representation from her attorney requesting payment of TTD and medical expenses. In March 2000, Ms. Blair commenced this compensation case. In her disputed claim form, she describes the "accident" as follows: "[w]hile reaching for a box of stock, claimant injured her lower back," and she represents that she reported this unwitnessed accident to her head supervisor, Mr. Chaisson, on the day it occurred. In its answer, Wal-Mart generally denies Ms. Blair's allegations and asserts the affirmative defense of forfeiture under La. R.S. 23:1208.
A trial was held in June 2001 at which three witnesses testified: Ms. Blair; her mother, Ms. Borden; and her supervisor, Mr. Chaisson. Based on the testimony and evidence introduced, the trial court found that a work-related accident and injury occurred on September 4, 1999; Ms. Blair was entitled to TTD benefits from September 5, 1999 forward in the amount of $151.04 per week and to all unpaid medical expenses; and Wal-Mart reasonably controverted the claim and thus was liable for neither penalties nor attorney's fees. From that judgment, Wal-Mart appeals.

DISCUSSION
On appeal, Wal-Mart alleges four assignments of error; particularly, it alleges the trial court erred in: (i) rejecting its affirmative defense of forfeiture under La. R.S. 23:1208 (ii) finding the claimant carried her burden of proving an accident, (iii) finding the claimant carried her burden of proving TTD, and (iv) ordering it to pay medical expenses. We separately address each of these assignments of error.

(i) Forfeiture under La. R.S. 23:1208
La. R.S. 23:1208 is an anti-fraud provision that applies to any false statements or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits. Resweber v. Haroil Constr. Co., 94-2708, 94-3138, p. 1 (La.9/5/95), 660 So.2d 7, 9. Ms. Blair's alleged misrepresentations *1046 on which Wal-Mart relies, are the following:
(1) Denying in her deposition telling Mr. Chaisson that her back was not hurting from lifting at work but rather was from her back problems that preexisted her employment, and further that she was used to her back going out. In fact she told Norris this at the time of the alleged accident.
(2) Claiming in her deposition that she told a Wal-Mart manager named Melanie that she was not coming back to work because she hurt herself at work (allegedly making this call from the hospital). In fact she only told Melanie that she would no longer be working for medical reasons, but gave no specifics.
(3) Claiming in her deposition that she advised Norris, her manager, that she hurt her back from lifting at work on the day of the accident. In fact, she told him that her back was not hurting from the lifting, but was always hurting before working at Wal-Mart.
Implicitly rejecting Wal-Mart's § 1208 defense, the trial court characterized Ms. Blair as "a credible witness on all issues relevant to this workers' compensation claim." This claim presents a classic credibility call. Although Ms. Blair and Mr. Chaisson testified consistently at trial that she was engaged in zoning when her back began to hurt, their testimony diverged as to what she stated regarding the reason for her back hurting. Wal-Mart's position is that she stated it was hurting because she had a pre-existing back problem. Ms. Blair's position is that she was able to work, and that she had been working for ten months, as a stock clerk/sales associate for Wal-Mart without any problems.[1]
At trial, Mr. Chaisson denied that Ms. Blair ever told him she hurt herself at work; instead, he gave the following version of the September 4, 1999 incident:
She came to me saying that her back had hurt, and she wanted to go home; so I asked her what had happened, and she told me that she was bending down to pick up a box, and her back went out on her; so at that point ... I said, "Let's go fill out an incident report"; and she said "No," her back goes out on her all the time; so I actually asked her two more times about filling out an accident report before letting her go home; and she refused both times because she stated her back goes out on her all the time.
The record also contains a written statement that Mr. Chaisson prepared, which similarly states:
On 9/4/99, Sheri Blair hurt her back, she came to me asking if she could go home. I told her we need to fill out an accident form. She told me she didn't want to fill out an accident report because she has a bad back. Her back goes out on her all the time. That is why she did not want [to] fill out an accident report. She said it wasn't because she picked up merchandise it's just that her back goes out on her.
Ms. Blair, on the other hand, gave the following version of the accident in her deposition:
[M]y duties were to take the stock out which consists of paper good items. I was dealing with maybe cases of Scott tissue, you know, different tissue products. I was to climb up a ladder, bring the stuff down the ladder, open the box, and put ityou know, keep the shelves stocked. Going up and down the ladder *1047 with boxes. Coming up and down. When I proceeded to bend down and open up the box I felt a little pulling in my back. I stoodfrom bending down, I stood back up and that's when I felt the pain maybe a little more tightening.
I still proceeded to do my work though and I was bringing back some more stock back up the ladder because I pulled down too much and when I came back down the ladder, that's when I felt it was starting to get worse. I asked a manager could I go take a break because I didn't know, you know, the seriousness of the injury.
At trial, she similarly testified:
I was unloading and putting up stock... going up the ladder, coming down.... I was working in the tissue area when it happened, getting the tissue off the riser and ... putting out the stock, setting it up; and when I bent down to pick up the box and put it back up on top of the riser, and I came down the ladder, that's when I started feeling the tightness in may back. It wasn't so strong at first, but then I tried to continue to work; but I felt my back tighten; so I asked Norris if I could take a break, like a 15-minute break; and so he told me sure ...
But when I sat down, the pain started increasing more. I went and told Norris, "Look, I need to go home. Maybe if I go soak or something ... I will be back the next day. My back is hurting."
As noted, the trial court found Ms. Blair's version credible. In a workers' compensation cases, it is well-settled that the appropriate standard of appellate review is the manifest error or clearly wrong standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706, 710. Under that standard, "[t]he trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." Bruno v. Harbert Int'l, Inc., 593 So.2d 357, 361 (La.1992). Based on the record, we cannot say the trial court was manifestly erroneous or clearly wrong in its factual finding on this issue.

(ii) Un-witnessed accident
A threshold requirement in a workers' compensation case is that a plaintiff establish "`personal injury by accident arising out of and in the course of his employment.'" Bruno, 593 So.2d at 360 (quoting La. R.S. 23:1031)(emphasis supplied). Although the workers' compensation laws are liberally construed in favor of coverage, the plaintiffs burden of proving personal injury by an accident is not relaxed and must be proven by a preponderance of the evidence. Coats v. American Tel. & Tel. Co., 95-2670, p. 4 (La.10/25/96), 681 So.2d 1243, 1245.
A plaintiff's testimony alone may be sufficient to establish an accident provided that: "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." Bruno, 593 So.2d at 361. In determining whether the Bruno elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and co-worker testimony, (3) family and friends' testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. See 13 H. Alston Johnson III, Workers' Compensation Law and Practice: Malone & Johnson, Louisiana Civil Law Treatise § 253 (3d ed.1994); 1 Denis Paul Juge, Louisiana Workers' Compensation, § 8:1 (2d ed.2002).
*1048 The first factor is whether the employee filed a prompt accident report, or failed to do so. It is undisputed that Ms. Blair rejected Mr. Chaisson's three requests on the day of the alleged accident to fill out an accident report. Mr. Chaisson, however, could have insisted that she do so before allowing her to leave. Regardless, the trial court in its written reasons for judgment found that "[c]laimant sustained and reported a work-related accident on September 4, 1999." As discussed above in relation to the § 1208 defense, that factual finding was not manifestly erroneous.
Second, "when the employee testifies that he told his supervisor about the accident or states that the accident was witnessed by co-workers and their trial testimony does not confirm his testimony, the court may conclude that no accident happened." Juge, supra. at § 8:1. Such is not the case here. Although Ms. Blair and Mr. Chaisson give different accounts of what she told him regarding why her back was hurting, both testified consistently that she was engaged in zoning when her back began to hurt. To the extent their testimony diverged, the trial court found in Ms. Blair's favor. Again, as discussed above in relation to the § 1208 defense, that finding was not manifestly erroneous.
Third, testimony by family and friends to the effect that the claimant related the event to them soon afterwards, in substantially the same manner that he now recounts it, is corroborative. Malone & Johnson, supra. Ms. Blair's mother, Ms. Borden, testified at trial that the next day her daughter was hospitalized due to severe back pain. She further testified that, at her daughter's request, she called Mr. Chaisson and informed him of her daughter's inability to return to work due to an injury on the job the prior day. Ms. Borden still further testified that her daughter has been unable to return to work since the accident. Ms. Borden's testimony thus corroborates Ms. Blair's testimony.
Fourth, "[o]ne of the most important factors considered by the courts is whether the early medical records support the history of a job accident." Juge, supra at § 8:1. The medical records introduced corroborate Ms. Blair's testimony that she presented on September 5, 1999 at the emergency room with complaints of severe back pain, which she related to picking up a box at work the prior day.
Fifth, whether the employee continues working after the accident is another consideration. In this case, Ms. Blair never returned to work at Wal-Mart or elsewhere after the alleged accident.
The final factor is a prior, similar injury. "The fact that an employee has previously had an injury similar to the one that is alleged to have occurred at work is generally irrelevant in a workers' compensation claim as the employer `takes his employee as he finds him.'" Juge, supra at § 8:1. This factor, however, becomes relevant "if the employee denies that he ever had such injury or denies that the prior injury was still causing him problems prior to his `accident' at work and this denial is contradicted by the evidence at trial." Id.
In this case, Ms. Blair admits she had a prior, similar injury in 1996 while employed at the Hilton Hotel when some chafing dishes fell on her and injured her back. She, however, contends that her prior injury had resolved itself. As noted, Wal-Mart counters that Ms. Blair's injury was a continuing one. In support of that claim, Wal-Mart relies on Ms. Blair's testimony at trial that her back was never the same after the Hilton accident coupled with various entries in the medical records.[2] *1049 Again, the trial court resolved that factual dispute in Ms. Blair's favor, and the record supports Ms. Blair's contention that her prior injury had resolved itself. In that regard, we find it relevant that Ms. Blair had been working at Wal-Mart for about ten months before the accident occurred without any problems. We also find it relevant that in the December 1997 settlement documents from the prior compensation proceeding arising out of the Hilton accident, the parties represented that Ms. Blair's TTD had ceased for more than six months "as per the opinions of the orthopedic surgeons who have treated her."
The trial court touched upon all six factors in its written reasons for judgment, reasoning:
Claimant sustained and reported a work-related accident on September 4, 1999 to her supervisor. However, claimant initially thought her injury was not going to be significant and declined an accident report and doctor visit. However, after leaving work, claimant soon came to realize that the work injury was significant and sought medical treatment on September 5, 1999.
Claimant has a pre-existing back condition. Claimant filed a workers' compensation claim in 1996 which resulted in an indemnity settlement of $1,500 (One Thousand Five Hundred Dollars). Claimant has treated with St. Claude General since 1994. However, prior to this accident on September 4, 1999, claimant had last treated with St. Claude General on May 12, 1998 well over one [year] earlier.
After listening to all the witnesses and evidence, this OWC Court finds that claimant is a credible witness on all issues relevant to this workers' compensation claim.
This OWC Court is not surprised that an accident with injury occurred when the female employee who weighed 370 pounds and had a prior back injury, was hired for a job which included moving and lifting boxes.
Under the manifest error standard of review, reasonable credibility evaluations and factual inferences should not be disturbed upon review where conflict exists in the testimony or the facts. Such is the case here.
Wal-Mart alternatively argues that even assuming Ms. Blair's back began hurting while she was lifting a cardboard box, i.e., zoning, this was only a "gradual deterioration" of her earlier back problems and not an "accident." Continuing, Wal-Mart contends that Ms. Blair was neither knocked down, nor fell down on the job and that the only real accident Ms. Blair sustained was the one at the Hilton Hotel in 1996 for which she has undergone substantial medical treatment.
The applicable statutory definition of "accident" is "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021. Under this current definition *1050 of "accident," recovery is precluded for a "gradual deterioration," i.e., a "theory of wear and tear over the years of working." Juge, supra at § 8:2. Rather, to recover, a claimant is required to establish an "actual, precipitous event." Id. The courts, however, have declined to construe this current definition as "alter[ing] the longstanding rule that the employee's predisposition to injury will not preclude recovery provided an actual event is identified as having occurred at work." Id.
The cases Wal-Mart cites in support of its argument that Ms. Blair suffered simply a "gradual deterioration of her earlier problems that she sustained from the Hilton injury" are distinguishable. In Matthews v. Taylor Temporary, Inc., 97-1718 (La.App. 4 Cir. 2/11/98), 707 So.2d 1021, we found the employee failed to prove a precipitous event and therefore concluded there was no "accident." Although the employee's claim form alleged his injury resulted from "lifting 80 pds. of rubber adding up weekly to the amount of 50,000 pounds," the employee's trial testimony was that "he felt the job duties in general, including lifting and twisting, caused him to develop pain." 97-1718 at p. 2, 707 So.2d at 1023.
In Daspit v. Southern Eagle Sales & Services, Inc., 98-1685 (La.App. 4 Cir.1/20/99), 726 So.2d 1079, writ denied, XXXX-XXXX (La.6/15/01), 793 So.2d 1245, we affirmed the trial court's finding that the plaintiff's injury was the continuing effect of a prior auto accident injury he had sustained, reasoning that "plaintiff introduced no evidence to show the extent to which his initial injury may have been aggravated by the claimed incident at work." 98-1685 at p. 7, 726 So.2d at 1082.
In Guillot v. Winn-Dixie of La., Inc., 189 So.2d 52 (La.App. 4th Cir.1966), we affirmed the trial court's finding that plaintiff did not sustain an accident. In so doing, the trial court found the defendant's version credible, which was that the first complaint of a job-related injury was made after plaintiff's employment was terminated.
In Sisk v. Martin Specialty Coatings, 28,592 (La.App. 2 Cir. 8/21/96), 679 So.2d 569, the court of appeal reversed the trial court's finding that the plaintiff had established an unwitnessed accident. In so doing, the court reasoned that the plaintiff "recounted his history of work place `accidents' with a lack of consistency and an imprecision of detail sufficient to cast doubts upon his credibility." 28,592 at pp. 9-10, 679 So.2d at 575. The court also noted the contrary testimony of plaintiff's supervisors and the lack of contemporaneous, objective medical corroboration of an injury. Id.
In sum, the cases on which Wal-Mart relies are all distinguishable. Based on the record in this case, we cannot say the trial court was manifestly erroneous in finding that Ms. Blair experienced an accident within the course and scope of her employment, causing injury for which she sought medical treatment shortly thereafter.

(iii) Disability
Wal-Mart's third assignment of error is that the trial court erred in awarding Ms. Blair TTD benefits. Simply stated, Wal-Mart contends that Ms. Blair's post-accident condition was not significantly different than her pre-accident condition.
An employee's entitlement to TTD is governed by La. R.S. 23:1221(1)(c), which provides that:
[W]henever the employee is not engaged in any employment ... compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, that the employee is physically unable to engage in any employment or self-employment.
*1051 To satisfy the elevated burden of proving by clear and convincing evidence, the jurisprudence has recognized that an employee must introduce medical evidence of a disability. See Jackson v. Domtar Industries, Inc., 98-1335, pp. 6-7 (La.App. 3 Cir. 4/7/99), 732 So.2d 733, 738, writ denied, 99-1369 (La.7/2/99), 747 So.2d 21 (collecting cases); Scherer v. Interior Plant Design, 98-702 (La.App. 3 Cir. 10/28/98), 724 So.2d 797, writ denied, 99-0297 (La.3/26/99), 739 So.2d 792.
Ms. Blair contends that her own testimony and the medical records supporting her testimony are sufficient to establish her entitlement to TTD benefits. Specifically, she relies upon the medical records from her hospitalization and her various visits to her two treating doctors that were introduced at trial. Ms. Blair further relies on her own testimony that her back injuries were so painful that it made her unable to do even the simplest tasks and that she was never released from the care of either of her doctors.
As Wal-Mart emphasizes, the sole medical evidence of Ms. Blair's disability, i.e., inability to engage in any employment, is two handwritten notes from her doctors dated September 21, 1999, and November 29, 1999. The former note, by Dr. Marrero, simply certifies that she is under his care, that she is unable to work for an undetermined period of time, and that she is "disabled." The latter note, by Dr. Wiley, simply states that "[d]ue to chronic lower back pain, Ms. Blair is unable to work at this time." Neither of her treating doctors (Drs. Marrero or Wiley) was deposed or testified at trial. Based on this limited medical evidence, Wal-Mart contends that even assuming Ms. Blair established an entitlement to TTD, it should be limited to a two-month period. We agree.
As noted, to satisfy her burden of proving by clear and convincing evidence her physical inability to engage in any employment, Ms. Blair was required to introduce medical evidence of her disability. Ms. Blair's own testimony falls short of establishing by clear and convincing evidence her entitlement to TTD. See Lightell v. City of New Orleans, 96-2013, p. 4 (La.App. 4 Cir. 2/19/97), 689 So.2d 732, 735. Indeed, Ms. Blair acknowledged in both her deposition and at trial her ability to engage in some, albeit limited and perhaps unavailable due to her limited education, type of job.[3] Although we sympathize with plaintiff's plight, her failure to produce any other medical evidence of a disability requires that we, as Wal-Mart suggests, limit the award of TTD to the two months of disability established by her doctors' notes.
Because the issue before the hearing officer was whether Ms. Blair was entitled to TTD benefits, her entitlement to SEB benefits was never considered by that court. Therefore, we find it necessary to remand for the hearing officer to address that issue. As in Smith v. Gaylord Container Corp., XXXX-XXXX (La.6/29/01), 791 So.2d 629, "on remand the parties should be allowed to offer whatever evidence they deem appropriate to support or rebut the award of supplemental earnings benefits. See La. R.S. 23:1221(3)(c)(i)." See Nolan v. Rawls Farming Co., 35,086, p. 14, n. 4 *1052 (La.App. 2 Cir. 10/31/01), 801 So.2d 524, 533, writ denied, XXXX-XXXX (La.3/15/02), 811 So.2d 910.

(iv) Medical expenses
Wal-Mart's final assignment of error is that the trial court erred in awarding Ms. Blair medical expenses given her acknowledgement that Medicaid paid all of her medical expenses. Citing La. R.S. 23:1212, Wal-Mart contends that Medicaid's payment of the medical expenses extinguished those amounts; hence, it was legal error for the trial court to order it to pay any medical expenses to Ms. Blair. We agree.[4]
At the time of the accident in question, La. R.S. 23:1212 provided, in part, as follows:
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses....
Addressing a similar issue, Justice (then Judge) Knoll in Granger v. Nelson Logging, 96-223 (La.App. 3 Cir. 12/4/96), 685 So.2d 400, held that Medicare's payment of an employee's medical expenses extinguished the employee's claim for those expenses; in so doing, she remarked:
We have serious doubts as to whether it was the intention of the legislature to have payments by Medicare extinguish the obligation of the employer to pay medical expenses under worker's[sic] compensation. The statute's operation in the case sub judice undermines the basic principle of worker's[sic] compensation law, namely, that persons who enjoy the benefit of an employee's labor should be the ones to bear the cost of injuries incident to that labor. As a result of the application of La. R.S. 23:1212 to the instant case, the State will ultimately bear much of the burden of Mr. Granger's injuries, while C & M [the employer], having enjoyed the benefit of Mr. Granger's labor, will receive a windfall.
96-223 at p. 6, 685 So.2d at 403.
In La. Acts 2001, No. 1062, which became effect August 15, 2001, the Legislature amended La. R.S. 23:1212 to provide that "the medical expenses are not to be extinguished as an employer debt if paid by Medicaid or other state agencies. The amendment also gives Medicaid and the other state agencies the right to recover any payments from the employer." Juge, supra at § 12:7. Particularly, the amendment added the following language to that statutory provision: "[p]ayment by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state against the employer or insurer." La. R.S. 23:1212(B). That amendment, however, cannot be retroactively applied to this pre-amendment accident. See Gilmore v. SGB Constr. Services, Inc., 97-1669 (La. App. 1 Cir. 5/15/98), 712 So.2d 663 (finding the original enactment of this statute could not be retroactively applied to an accident that occurred prior to its effective date). We thus reverse the trial court's award of medical expenses.

DECREE
For the foregoing reasons, the judgment of the trial court finding that Ms. Blair *1053 sustained a work-related accident is affirmed. The trial court's award of TTD benefits is amended and such benefits are limited to a two month period; however, this matter is remanded to the trial court to consider Ms. Blair's entitlement to SEB. The trial court's award of medical expenses is reversed. Costs of this appeal are split between the parties.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Actually, Ms. Blair had two terms of employment at Wal-Mart. She worked for about nine months in 1998. She then voluntarily quit for personal reasons. She was rehired in August 1999, and she worked until the day of the accident, September 4, 1999.
[2] Wal-Mart cites the following evidence: (1) a February 1997 MRI showing a bulging disc at several levels and a degenerative disc disease in her lower back; (2) statements Ms. Blair made to hospital employees that she had "severe back pain" between her 1996 accident at Hilton Hotel and the 1999 incident at Wal-Mart, (3) that she had "chronic low back pain" before the incident at Wal-Mart, and that she had back pain "off and on" since the Hilton accident; and (4) another emergency room visit for low back pain before the Wal-Mart incident
[3] When questioned at trial regarding her present ability to engage in any type of work, Ms. Blair responded that "because of [her ninth grade] education, it look like the only type of jobs I'm able to do is maybe, you know, label jobs. I can't think of maybe no desk work or typing or anything, unless I go back to school for it." In her deposition, she similarly stated: "[m]aybe something that won't require too much standing or maybe some sitting. You know, something that I can, you know like get up, sit down, get up. Something where I won't have to just sit in one spot maybe. Maybe typing."
[4] We express no opinion on the point Ms. Blair raises regarding federal statutory provisions entitling Medicaid to reimbursement when an injured party recovers any medical expenses from a third party. Given our reversal of the entire medical expense award, we also decline to address Wal-Mart's alternative argument that under La. R.S. 23:1442(B) its liability for unauthorized, nonemergency medical care is limited to $750.