909 So.2d 699 (2005)
Cathey SHEPPARD a/k/a Cathy Sheppard, Plaintiff-Appellant
v.
ISLE OF CAPRI, Defendant-Appellee.
No. 40,048-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
*700 Davis Law Office, LLC, by S.P. Davis, Sr., Shreveport, for Appellant.
Lunn, Irion, Salley, Carlisle & Gardner, by Walter S. Salley, Shreveport, for Appellee.
Before STEWART, PEATROSS and MOORE, JJ.
MOORE, J.
Cathey Sheppard filed a disputed claim for benefits arising from an unwitnessed accident at the Isle of Capri casino in Bossier City, where she was a cage cashier. The WCJ found a total absence of evidence to corroborate the incident. Finding no manifest error, we affirm.

*701 Factual Background

Ms. Sheppard had worked at the Isle for about a year and a half; part of her job was to pick up bags of coins after they were filled by the Jet Sort coin sorter. She testified that she had to lift bags eight to 10 times an hour, with dollar bags weighing 20 to 30 lbs. On the swing shift on March 30, 2002, she reached down to pick up a bag: "I had a pull in my back with a sharp pain[,]" a "heavy pain in my lower back." She described the pain as a "10," "like nothing I had ever had before," causing her to cry out loud. Ms. Sheppard testified that about five minutes later, she told her coworker Cassandra Jackson that she had hurt her back; at the end of the shift, she told Ms. Jackson that she probably would not come in to work the following Monday.
At trial, Ms. Jackson testified that although she worked with Ms. Sheppard, she did not see the accident. Ms. Jackson was not asked if she heard Ms. Sheppard cry out in pain. She vaguely recalled Ms. Sheppard saying "her back hurt," but not that she had just injured it.
Ms. Sheppard did not return to work at the Isle after this. She testified that she phoned in on April 3, telling her cage manager, Judy Jones, that she had hurt her back. According to Ms. Sheppard, Ms. Jones replied that she ought to apply for family leave under FMLA, and transferred her to the Isle's FMLA generalist. Ms. Sheppard further testified that Christina Coss, the FMLA generalist, told her it was probably from "lifting the coins," but nonetheless treated it as an FMLA claim.
Another cage cashier, Glenda Clark, testified that she took Ms. Sheppard's call on April 3 and wrote the call-out slip; Ms. Sheppard gave her the information noted on the slip, "Reason for absence/lateness: sick." Ms. Jones, the cage manager, testified by deposition that Ms. Sheppard never said she had been hurt on the job, only that she was sick; there was also an April 1 call-out slip listing "stomach virus" as the reason for absence. Ms. Coss, the FMLA generalist, testified by deposition that she spoke to Ms. Sheppard about her FMLA request on April 5, 16 and 26, and on those dates Ms. Sheppard never mentioned any work-related accident.
Ms. Sheppard went to a chiropractor, Dr. Patrick Peele, on April 4. She testified she was in acute pain that day and thus may not have told him about the work-related accident, only that her job involved a lot of lifting. After nearly a month of manipulations and differential current therapy, she was little improved so she went to a general practitioner, Dr. David Hudson, a physician listed in the Isle's employee handbook. She admitted that she may have likewise failed to tell this doctor about a work-related injury, but was certain she did so on a later visit.
Dr. Hudson's office records included Ms. Sheppard's handwritten patient history, which said nothing about an accident on the job; he ascribed her symptoms to stress. He gave her Naprosyn, an NSAID (Nonsteroidal Anti-inflammatory Drug), and Paxil, an anti-depressant, and told her to quit the chiropractic manipulations. He testified that on June 26, she told him it was a workers' compensation claim, but she said nothing about the nature of the accident. Dr. Hudson also discovered that Ms. Sheppard had a history of back problems, including a lumbar strain sustained while working as a cashier at Brookshire's in 2000, a course of treatment at Mid-South Orthopedics, a lumbar sprain in 2001, and an MRI in October 2001.
On April 30, Ms. Sheppard filled out her FMLA application. The accompanying certification of health care provider, written *702 by Dr. Peele and signed by Ms. Sheppard, read, "Pt. reported the onset of her condition as starting 2-3 months ago." On the same day, she filed an accident/injury report referring to "back problem which happen [sic] several months ago," "caused by lifting bag of money in the cage." The Isle's risk claim manager, Sherolyn Beard, testified that company policy required employees to report any work-related accident the day it occurred; this was corroborated by a file copy of the Isle's safety policy, signed by Ms. Sheppard in January 2000. Ms. Beard added that by April 30, the surveillance video had been destroyed, and Ms. Sheppard did not list any eyewitnesses or submit any medical expenses; for these reasons, the Isle denied the compensation claim.
Ms. Sheppard filed this disputed claim in April 2003.
At trial in August 2004, Ms. Sheppard testified she was still in too much pain to work an eight-hour day; she described her pain as chronic, sharp and hard, requiring treatment at LSU Health Sciences Center. However, she admitted she had drawn unemployment compensation benefits from March through August 2003 (documents from the Department of Labor showed it was actually through October 2003). She also admitted she had worked intermittently as a substitute teacher for the Caddo Parish School Board since November 2003 and as a part-time cashier at Brookshire's since May 2004.

Action of the WCJ
The WCJ cited the law governing the plaintiff's burden of proving an unwitnessed accident, Bruno v. Harbert Int'l Inc., 91-1444 (La.1/17/92), 593 So.2d 357, and West v. Bayou Vista Manor Inc., 371 So.2d 1146 (La.1979). Because of Ms. Sheppard's significant history of low back pain predating this incident, the WCJ could not apply the corroborating factor that she "worked her job for quite some time prior to the accident without problems."
The WCJ noted her failure to report a work-related injury to either Dr. Peele or Dr. Hudson, as well as her inconsistent accounts of when the pain began: "Ms. Sheppard herself was never sure of the onset of the symptoms." Significantly, neither doctor related her current condition to a work injury on March 30, 2002.
The WCJ then found that the two call-out slips and one live witness contradicted Ms. Sheppard's claim to have reported the injury in early April. Most importantly, Ms. Sheppard's lead witness, Cassandra Jackson, simply did not corroborate the incident (she recalled Ms. Sheppard saying only that she "hurt her back") and lacked credibility (she "changed her demeanor quite a bit and this court felt she wasn't really being forthright"). In the absence of corroboration, the WCJ dismissed the claim.
Ms. Sheppard has appealed, urging by one assignment of error that the WCJ erred in finding she failed to prove a compensable injury.

Discussion
The threshold requirement in a workers' compensation case is that the claimant must establish "personal injury by accident arising out of and in the course of his employment." La. R.S. 23:1031 A; Bruno v. Harbert Int'l Inc., supra. Although the workers' compensation law is liberally construed in favor of coverage, the claimant's burden of proving an accident is not relaxed; he or she must prove by a preponderance of the evidence that an accident occurred. Id.; McLin v. Industrial Specialty Contractors Inc., XXXX-XXXX (La.7/2/03), 851 So.2d 1135.
*703 A claimant's testimony alone may be sufficient to establish an accident provided that "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." Bruno v. Harbert Int'l Inc., supra; Rosson v. Rust Constructors Inc., 32,789 (La.App. 2 Cir. 3/1/00), 754 So.2d 324, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1105. In determining whether the Bruno elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) family and friends' testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. Blair v. Wal-Mart Stores Inc., 2001-2211 (La.App. 4 Cir. 5/15/02), 818 So.2d 1042, citing 13 H. Alston Johnson III, Workers' Compensation Law and Practice (Louisiana Civil Law Treatise) § 253 (3d ed.1994); 1 Denis Paul Juge, Louisiana Workers' Compensation, § 8:1 (2d ed.2002).
Factual findings in workers' compensation cases are subject to the manifest error rule. Winford v. Conerly Corp, XXXX-XXXX (La.3/11/05), 897 So.2d 560. Under this rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. Id., citing Stobart v. State, 92-1328 (La.4/12/93), 617 So.2d 880. When there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Id. Thus, even when the appellate court is convinced it would have weighed the evidence differently had it been sitting as trier, the court of appeal may not reverse if the factfinder's findings are reasonable in light of the record reviewed in its entirety. Id.; Williams v. Saint Gobain Containers, 39,313 (La.App. 2 Cir. 1/26/05), 893 So.2d 144.

Discussion
By her sole assignment of error, Ms. Sheppard urges the WCJ erred in finding she failed to prove a compensable injury. She contends that she offered corroborating evidence similar to that found sufficient to prove accidents in Bruno and West, supra. She argues that a fair reading of the record will show:
(1) She did not have a significant history of back problems; her prior incidents were minor and fully resolved by March 30, 2002. She characterizes her own testimony to this effect as unrefuted.
(2) She was always sure of the onset of her symptoms. In support she quotes a long passage of her own testimony describing the accident and the onset of pain.
(3) The history she provided to various doctors was consistent and supports her account of the March 30 incident.
(4) Drs. Peele and Hudson did in fact relate her current condition to the March 30 incident.
(5) The two call-out slips and the live witness were not sufficient to override Ms. Sheppard's own testimony that she reported the accident promptly after it occurred.
(6) Ms. Jackson was a credible, unbiased witness who supported Ms. Sheppard's account of the incident.
The Isle submits that under the manifest error rule, this court should not disturb the WCJ's decision to reject the claimant's testimony. Stobart v. State, supra. The Isle suggests the record supports the finding that Ms. Sheppard gave widely divergent accounts of when her symptoms began, failed to report the alleged incident promptly to the Isle's security, and had a significant history of back injuries before March 30, 2002. The Isle *704 also urges that the WCJ was entirely correct to find that the alleged eyewitness, Ms. Jackson, utterly failed to substantiate Ms. Sheppard's account of the incident.
The issues on appeal are exclusively factual and subject to manifest error review. After carefully reading the transcript, depositions, medical records and other exhibits, we cannot say the judgment is plainly wrong. Each of the factors outlined by the court in Blair v. Wal-Mart Stores Inc., supra, fully support the WCJ's findings.
While Ms. Sheppard was adamant that she reported the accident promptly, the call-out slips failed to support this and several live witnesses contradicted her outright; the WCJ was entitled to find her report was late. Notably, Ms. Sheppard initially sought leave under FMLA, which would be inconsistent with a work-related injury. She offered no testimony from any supervisor to substantiate her claim of an accident. She called Ms. Jackson as a witness, but even from the impassive record, Ms. Jackson's testimony is vague and evasive, and provides no basis to disturb the WCJ's credibility call. There was no testimony of family or friends. Ms. Sheppard admitted continuing to work, first as a substitute teacher and then as a part-time cashier; she also drew unemployment compensation for seven months in 2003, indicating an ability to work. La. R.S. 23:1600(3)(a). Sitting as a trier of fact, this court might not have rejected the claim that Ms. Sheppard "had worked her job for quite some time prior to the incident without problems," as the record simply does not address this. Nonetheless, the medical evidence shows a fairly extensive history of prior back injuries, which the WCJ appropriately summarized.
Ms. Sheppard particularly argues that Drs. Peele and Hudson related her current condition to the accident. In response to a leading question, Dr. Peele agreed it was "more probable than not that the lifting of the bags caused her back to hurt": "I mean, I had no reason to believe other than what she was telling me, and I didn't find anything that would make me think anything else." Later, however, he clarified that Ms. Sheppard never reported any specific incident; he concluded it was "lifting as a repetitive problem that would aggravate her." On cross examination, Dr. Hudson agreed that her symptoms were consistent with an accident similar to the one she described and occurring on March 30; however, he also testified that she never described the accident or said when it occurred. On this equivocal testimony, we cannot say the WCJ was plainly wrong.
In short, the WCJ was entitled to find that other evidence discredited or cast serious doubt on Ms. Sheppard's claim of an unwitnessed accident on March 30. Further, the WCJ could find the circumstances following the alleged incident did not support the claim. Bruno v. Harbert Int'l Inc., supra; Rosson v. Rust Constructors Inc., supra. On this record, we perceive no manifest error. The judgment is affirmed.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs are charged to Ms. Sheppard in accordance with La. C.C.P. art. 5188. This opinion is designated for publication pursuant to La. R.S. 23:1310.5 F.
AFFIRMED.