942 So.2d 613 (2006)
Ruby BROCK, Plaintiff-Appellant,
v.
FRYMASTERS, Defendant-Appellee.
No. 41,561-WCA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2006.
*614 Michael D. Cox, for Appellant.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P. by Robert A. Dunkelman, Shreveport, for Appellee.
Before WILLIAMS, MOORE and LOLLEY, JJ.
MOORE, J.
The claimant, Ruby Brock, appeals a judgment rejecting her claim for workers' compensation benefits. We affirm.

Factual Background
Ms. Brock was first employed by Frymaster, a manufacturer of industrial deep fryers, in October 1997; by April 2004, she was working as a machine operator at the Line Avenue plant at an average weekly wage of $694.16. Frymaster's human resources and safety manager, Judy Lazarus, testified that part of Ms. Brock's job was to use a hook to pull a "slug pan" into position that it could be lifted by a crane. Nobody was precisely sure how much a slug pan weighed, empty or full, but estimates ranged from 75 lbs. to 300 lbs.
Ms. Brock testified that she injured herself on the night shift of April 1, 2004; she described "a throbbing pain" in her lower back which she first noticed while pulling the slug pan. For several years, however, she had suffered with chronic, severe diverticulitis, which she said also caused throbbing, aching pain in her lower back. On April 1 she thought she was suffering a flare-up of her colon, not a back injury. She completed her shift in pain and worked for several more days until it became unbearable.
On April 16, she went to her regular internist, Dr. Wen Liu, and reported lower back pain. Ms. Brock was certain that neither Dr. Liu nor his nurse ever asked her if any particular incident had touched off this recurrence of symptoms; however, Dr. Liu was positive that both he and the nurse asked Ms. Brock and she replied she had "not injured her back." He wrote in his report, "pain was precipitated by nothing." Dr. Liu ordered a colonoscopy.
Ms. Brock also had a history of psychiatric problems; prior to April 2004 she had two prior hospital admissions for major depression and was on regular medication from her psychiatrist, Dr. Kay Kennedy. On April 19, she returned to Dr. Kennedy for a major depressive episode, which she felt was prompted by diverticulitis. Dr. Kennedy placed her on long-term medical leave under FMLA, effective April 1, 2004. Dr. Kennedy could not explain why she selected April 1; at the time, Ms. Brock had not reported a work-related accident, on that date or any other.
Ms. Brock underwent the colonoscopy on April 27; this found two polyps which proved to be benign. Unlike a prior (December 2002) endoscopy, however, this one did not relieve her lower back pain. Because of her continued symptoms, she made an appointment with an orthopedic surgeon, Dr. James Zum Brunnen.
She saw Dr. Zum Brunnen on May 11, complaining of lumbar pain of about one month's duration. He asked the nature of her work; she mentioned lifting 75 lbs. at a time and (according to the doctor's notes) felt she might have pulled her back "the last week worked." He ordered an MRI; this showed "mild generalized bulging at L4-5" which he described as preexisting. However, by mid-May Ms. Brock *615 was certain she had injured her back at work on April 1.
Ms. Brock testified that she phoned a receptionist at Frymaster named "Helen" (nobody knew any receptionist by this name) to ask about filing a workers' compensation claim; Helen told her it was "too late." On June 29, she called Frymaster's human resources director, Una Palmer, who also told her it was too late to file for comp. Ms. Brock added that by the time Dr. Kennedy released her on psychiatric grounds, Dr. Zum Brunnen had placed her on a 20-lb. lifting restriction which exceeded any available work at Frymaster.

WCJ Proceedings
Ms. Brock retained counsel and filed the instant disputed claim on September 23, 2004. In her Form 1008, she alleged that she had reported an accident on April 1, 2004, and that Frymaster had paid her no wage benefits.
At trial in March 2006, however, she admitted that she did not report the accident to her coworkers or supervisor until June 4, when she phoned "Helen" to ask about filing a comp claim. She testified that she told her mother about it the next morning, and a friend named Ken Johnson, but she did not call either of these persons to testify. She adamantly denied telling anyone at Frymaster that she "hurt herself at home." On cross examination, she disputed Dr. Liu's recollection that she denied any injury; she also admitted she may not have told Dr. Zum Brunnen that she was lifting 75-lb. loads. She showed that Dr. Zum Brunnen took a second MRI in January 2006, finding a herniated disc.
Frymaster's human resources and safety manager, Ms. Lazarus, testified that Ms. Brock did not report a back injury until August 18, over four months after it allegedly occurred; she investigated and could not find any employee to corroborate the occurrence of an accident. Frymaster also showed that according to the medical records, Ms. Brock did not report an accident to any healthcare provider until over two months after it allegedly occurred. Frymaster argued that her failure to mention it to Dr. Kennedy, her psychiatrist, was particularly unusual as Ms. Brock had normally given this doctor minute details of anything that bothered her. Frymaster also showed that Dr. Zum Brunnen and Dr. Carl Goodman, an orthopedist who examined her at Frymaster's request, felt the bulging disc shown on the May 2004 MRI was preexistent and not due to an accident.
Frymaster's benefits administrator, Beth Swim, testified that Ms. Brock said in a phone conversation that she "hurt herself at home," but she had no written record of this call. Frymaster argued that no work-related accident had occurred, and Ms. Brock merely concocted the story when her psychiatric FMLA expired and she discovered the degenerative disc disease.
The WCJ ruled from the bench that a worker's testimony alone may be sufficient to discharge her burden of proof, but that Ms. Brock failed in that burden. First, she was simply not credible, owing to the many inconsistencies between her deposition and trial testimony, her statement to Ms. Swim that she hurt her back at home, and her disparate accounts of the injury to Drs. Zum Brunnen and Goodman. Second, Ms. Brock did not report an accident until after the first MRI, and after she initially told Drs. Liu and Zum Brunnen that there was no accident. Finally, when Ms. Brock ultimately reported the pain to Dr. Liu, she said it started over a week after the alleged accident. The WCJ concluded that these facts cast serious doubt on Ms. Brock's version of events and provided *616 no corroboration. He dismissed the claim with prejudice.
Ms. Brock has appealed, raising three assignments of error.

Discussion
By her first assignment of error, Ms. Brock urges the WCJ committed legal error "in concluding that the claimant could not meet her burden of proving an `accident' based upon her own testimony." The transcript clearly shows, however, that the WCJ stated the correct legal standard as enunciated in Bruno v. Harbert Int'l Inc., 91-1444 (La.1/17/92), 593 So.2d 357, 361:
"A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident."
Just because the WCJ ultimately found Ms. Brock's testimony discredited and uncorroborated does not mean that he applied the wrong burden of proof. This assignment of error lacks merit.
By her second assignment of error, Ms. Brock urges the WCJ committed manifest error in finding her testimony was "inconsistent or incredible, while finding the testimony of Beth Swim was credible." By her third assignment, she urges the WCJ was clearly wrong in finding that any alleged inconsistencies were material to her credibility. She contends that she had a perfectly good reason not to suspect a work-related injury at first, as the low back pain was virtually identical to that which she had previously suffered with diverticulitis. Thus, she contends, she had "no substantial or material discrepancies in her testimony at trial, in her pretrial deposition or in the history that she gave to the health care providers." Most importantly, she contends that the testimony of Ms. Swim was hearsay, contradicted by Ms. Brock and not supported by any Frymaster documents; as a result, the WCJ simply could not have accepted Ms. Swim's testimony over her own. She concludes that the WCJ "had a highly inaccurate memory with regard to what the claimant said she remembered about her coworkers" and "paid no attention to the dates whatsoever."
Frymaster responds that the WCJ's findings are not plainly wrong. It contends that Ms. Brock did not describe an on-the-job accident at trial, did not report one to any coworker or supervisor, denied any accident when asked by Drs. Liu and Zum Brunnen, and even failed to mention it to Dr. Kennedy. In effect, she is "now trying to bootstrap preexisting psychiatric problems onto an alleged work-related injury." Frymaster submits that the record was sufficient to discredit Ms. Brock's account of injury under Bruno v. Harbert Int'l, supra. It also urges that her failure to call corroborating witnesses, without explanation, created the presumption that the witnesses would be adverse to her. Wise v. Bossier Parish School Bd., XXXX-XXXX (La.6/27/03), 851 So.2d 1090, 180 Ed. L. Rep. 378.
An employee is entitled to workers' compensation benefits if she "receives personal injury by accident arising out of and in the course of [her] employment[.]" La. R.S. 23:1031 A. Although the workers' compensation law is liberally construed in favor of coverage, the claimant's burden of proving an accident is not relaxed; she must prove by a preponderance of the evidence that an accident occurred. Bruno v. Harbert Int'l, supra; McLin v. Industrial Specialty Contractors Inc., XXXX-XXXX (La.7/2/03), 851 So.2d 1135.
*617 A claimant's testimony alone may be sufficient to establish an accident, under the circumstances stated in Bruno v. Harbert Int'l, supra, and quoted above. In determining whether the Bruno elements are satisfied, commentators have articulated six pertinent factors the courts may consider: (1) late report; (2) supervisor and coworker testimony; (3) family and friends' testimony; (4) medical evidence; (5) continuing to work; and (6) prior injuries. Blair v. Wal-Mart Stores Inc., 2001-2211 (La.App. 4 Cir. 5/15/02), 818 So.2d 1042, citing 13 H. Alston Johnson III, Workers' Compensation Law and Practice (La. Civil Law Treatise), § 253 (3d ed.1994); 1 Denis Paul Juge, Louisiana Workers' Compensation, § 8:1 (2d ed.2002). This court has used these factors. Sheppard v. Isle of Capri, 40,048 (La.App. 2 Cir. 8/17/05), 909 So.2d 699.
Factual findings in workers' compensation cases are subject to manifest error review. Winford v. Conerly Corp., XXXX-XXXX (La.3/11/05), 897 So.2d 560. The reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. Id., citing Stobart v. State, 92-1328 (La.4/12/93), 617 So.2d 880. When there are two permissible views of the evidence, the factfinder's choice between them can never be manifestly erroneous or clearly wrong. Id.; Moore v. Transmissions Inc., 41,472 (La.App. 2 Cir. 9/27/06), 940 So.2d 694.
We have closely reviewed the record for manifest error. Ms. Brock candidly admitted not reporting her accident until weeks or months after it allegedly occurred. She claimed to have told her mother and a friend about it shortly afterward, but her failure to call these witnesses raises the presumption that they would not have corroborated her. Wise v. Bossier Parish School Bd., supra; Guidry v. United Furniture Distributors, 544 So.2d 100 (La.App. 3 Cir.1989). The first three factors of Blair v. Wal-Mart Stores, supra, weigh against Ms. Brock.
Further, the WCJ accepted Ms. Swim's testimony that in a phone conversation Ms. Brock admitted hurting her back at home. While some corroboration of this statement would have been helpful, the WCJ is not bound by the technical rules of evidence. La. R.S. 23:1317 A. Hearsay is admissible if it has indicia of reliability. Chaisson v. Cajun Bag & Supply, 97-1225 (La.3/4/98), 708 So.2d 375; Mitchell v. Brown Builders Inc., 35,022 (La.App. 2 Cir. 8/22/01), 793 So.2d 508, writ denied, 2001-2649 (La.12/14/01), 804 So.2d 636. The WCJ, in its unique position to hear and see both witnesses, obviously found Ms. Swim more sincere and credible; we cannot overturn this finding.
Contrary to Ms. Brock's argument, the medical evidence also fails to corroborate her claim. Dr. Zum Brunnen interpreted the June 2004 MRI as showing degenerative disc disease; according to his notes, Ms. Brock said she might have pulled her back "last week" (which would have been in early May), but never described any event or accident as triggering the pain. He was positive that the disc fragment shown on the January 2006 MRI was unrelated to any incident in April 2004. Dr. Goodman interpreted the first MRI as "nothing significant," only "mild bulging" that would be expected in any 51-year-old woman. In short, the orthopedic evidence was unhelpful to Ms. Brock's case.
Dr. Liu testified that Ms. Brock had complained of low back pain intermittently since 2002; perhaps because she failed to report an accident or injury when she visited him on April 16, 2004, he ascribed her symptoms to diverticulitis. He remained unaware of her alleged accident until his deposition in May 2005.
*618 Dr. Kennedy's testimony is perhaps the most favorable, in that it left open the possibility that because of her prior intestinal inflammation and bouts of major depression Ms. Brock might not have ascribed her symptoms to her work. However, Dr. Kennedy could not recall that Ms. Brock ever said an accident precipitated her symptoms, an omission she considered "unusual." In short, the medical evidence offers only the possibility that an accident occurred as claimed by Ms. Brock. It does not prove this claim by a preponderance.
Viewed as a whole, the evidence discredits or casts serious doubt on Ms. Brock's version of the incident and fails to corroborate it. The WCJ was therefore entitled to find that she failed in her burden of proof. Sheppard v. Isle of Capri, supra. The assignments of error lack merit.

Conclusion
For the reasons expressed, the judgment is affirmed. All costs are to be paid by Ms. Brock to the extent permitted by La. C.C.P. art. 5186.
AFFIRMED.