MOORE, J.
 

 | jThe employer, St. Francis Medical Center, appeals a judgment finding that the claimant, Bonita Dugan, sustained a work-related injury and awarding her temporary, total disability (“TTD”) benefits, medical expenses, two penalties and an attorney fee. Ms. Dugan answers the appeal, seeking legal interest on the award and an additional attorney fee. We affirm the finding of a work-related injury and the award of medical and TTD benefits, and amend the judgment to award judicial interest. However, we reverse the imposition of penalties and an attorney fee, and dismiss the claim for an additional attorney fee.
 

 Factual Background
 

 Ms. Dugan began work at St. Francis in January 2008 as a certified nurse assistant on sixth floor medical earning $8.00 an hour (later raised to $8.15). Initially, she worked the graveyard shift, which she described as “easy.” After about two months, St. Francis moved her to the morning shift, which was more fast-paced and demanding. She described bathing patients nonstop, moving and lifting some heavy people; she was 39 years old, only 5'4" and 150 lbs. She testified that at some point, her back began to hurt, a needle-like pain in the lower back.
 

 It transpired that Ms. Dugan had a significant history of back trouble. In 1993, while living in California, she was the victim of a domestic abuse battery resulting in a broken neck; she had a surgical bone graft with the donor tissue coming from her lower back above the pelvis — precisely where she was now hurting. After moving
 
 *1160
 
 to Louisiana, she worked as a sitter or CNA for various healthcare providers, and sustained three work-related |2back injuries: (1) at Premier Rehabilitation in June 2004, she hurt her back moving a patient; (2) at Care Solutions in September 2004, she again hurt her back moving a patient; (3) at D & D Community Connections in June 2006, she yet again hurt her back moving a patient, and received workers’ comp for this. In addition, in February 2007 she was in an auto accident in Monroe that totaled her car and resulted in back pain and numbness in her legs. However, she insisted that all these prior incidents caused only nagging yet manageable pain; she never missed more than a few days’ work because of them.
 

 Ms. Dugan was very hazy on specific dates and even chronology, but based on St. Francis’s time cards and medical records, the initial incident must have been on April 19, 2008. On that date she went to the St. Francis ER complaining of back pain. She did not, however, tell anyone that it started on the job, only that she may have pulled a muscle. She received a three-day work release. She went to the St. Francis Convenience Clinic on April 21, still complaining of back pain; she received a Medrol Dosepak and Toradol for pain relief, and a work release through April 24.
 

 On April 24, she went to Dr. Douglas Brown, an orthopedic surgeon, reporting that she had to lift and pull patients at work, but not citing any specific incident; she also admitted suffering low back pain off-and-on for years. On the orthopedic history, Ms. Dugan wrote that her present pain started on April 11, 2004 (four years prior). Diagnosing muscular back pain, Dr. Brown gave her steroid and Xylocaine injections. Later, in deposition, he agreed that her condition could be work-related.
 

 JJVTs. Dugan returned to work a short while later (the time card record showed it was on April 29) doing her regular day shift, but was in constant pain that gradually got worse. She testified that on her final day, a Saturday, she was trying to turn a large, 300-lb. patient when she suddenly felt a sharp, disabling pain in her low back and radiating down her left leg. She then tearfully went to her charge nurse, Rutha Taylor, saying she was hurting too bad to work and had to leave. She testified that Ms. Taylor put her on the phone with the house supervisor, Rookh Brothers, who gave her permission to go home. (Ms. Brothers testified this did not happen, as she was on leave that day and took no phone calls.)
 

 The time card record shows that Ms. Dugan’s final day was May 3. Ms. Taylor confirmed that Ms. Dugan had periodically complained of back pain, but she (Ms. Du-gan) always ascribed it to her earlier injuries and never to anything that happened at St. Francis.
 

 Three days later, on May 6, Ms. Dugan went to her family doctor, Dr. J.D. Patterson. She testified that she told him she worked as a CNA and aggravated her back at work. Dr. Patterson ran some x-rays and noted “six lumbar vertebrae with transitional lumbosacral vertebrae.”
 

 Ms. Dugan had health coverage with St. Francis, administered by Gilsbar. On May 19, she applied to Gilsbar to cover her ER visit. She wrote on the form that it was an ongoing condition “from 6/23/06” (almost two years prior) and that the accident occurred “lifting & pulling on pts. 4/26/08, St. Francis Medical (not responsible).”
 

 LMs. Dugan then went to another orthopedic surgeon, Dr. Jose Ferrer, on May 20. She reported that her current pain had started on April 21, 2008, but did not mention getting any prior treatment for it
 
 *1161
 
 or having any prior back problems. Dr. Ferrer ordered an MRI which showed a herniated disc at L4-5 on the left side, of recent origin. In deposition, he could not estimate when it happened, but stated that nobody could work in that kind of pain for over a week. He also could not surmise how it happened; it could be from trauma or from daily activities, but it was consistent with trying to lift a heavy patient. He referred her to Dr. Vincent Forte at Louisiana Pain Clinic.
 

 Ms. Dugan went to Dr. Forte on June 10. She wrote on his questionnaire that her current pain started on June 23, 2006 (almost two years prior) with exacerbation about two months ago. He scheduled her for a series of three epidural injections along the L4-5 nerve root. She took the first two but then stopped; she testified that she simply could not pay for the last one, and still owed for the first two.
 

 Ms. Dugan admitted that she never told anybody at St. Francis that she hurt herself on the job. Several hospital employees — Ms. Brothers, her nursing supervisor; Kay Downey, manager of the medical floor; Amy Owens, specialty coordinator of the medical floor; Kim Bourne, the workers’ comp manager and risk analyst — all testified that reporting any injury to your supervisor was the required protocol and that Ms. Dugan never did so.
 

 |bMs. Dugan testified that she phoned Ms. Owens sometime in May to ask about filing a comp claim, but Ms. Owens told her it was “too late.” Ms. Owens, however, flatly denied this, and testified that in fact she asked Ms. Dugan point-blank, “Did it happen here?,” to which she replied, “It happened previously.” Ms. Dow-ney similarly testified that Ms. Dugan told her it was an “old injury from an accident.”
 

 Action in the Office of Workers’ Compensation
 

 Ms. Dugan filed the instant disputed claim on July 2, 2008. She alleged that the injury occurred on
 
 A-pril 26, 2008,
 
 while she was turning a patient. The time card record, however, showed that she was not at work that day. On the second day of trial in April 2009, after much confusion regarding dates, the WCJ allowed her to amend her claim to state the injury was
 
 May 3, 2008.
 
 Ms. Dugan testified that at first, she did not realize how serious her back injury was, and thus did not make a comp claim early on. She insisted she did not mean to mislead anyone, but that she was simply terrible at remembering dates. She also testified that she is still taking a lot of pain medication and in her current state she cannot work. Her husband corroborated much of this testimony. Dr. Ferrer testified, by deposition, that most people with this kind of disc injury cannot work.
 

 St. Francis’s witnesses agreed that Ms. Dugan never reported a work-related injury; Ms. Owens and Ms. Downey testified that she explicitly denied having one. Ms. Bourne admitted that Gilsbar received Ms. Dugan’s claim form in May 2008, but because this said the injury predated her employment at St. Francis and that St. Francis was “not responsible,” she|fihad no idea there was a comp claim until months later on receipt of Ms. Dugan’s Form 1008.
 

 After taking the case under advisement, the WCJ ruled orally. It recounted Ms. Dugan’s history, but found that her back pain had never previously been unbearable. Citing Drs. Brown and Ferrer, as well as Ms. Dugan’s husband, the WCJ found that she is “disabled and continues to be so without resolution.” Further, it was of no consequence that Ms. Dugan could not identify the precise date of her injury or immediately appreciate how bad
 
 *1162
 
 ly she was hurt; she sustained a compen-sable injury while trying to turn a heavy patient. The WCJ awarded TTD until Ms. Dugan is released to return to work, and all medical and incidental expenses not covered by health insurance.
 

 Finally, the WCJ found that the comparison between Ms. Dugan’s condition before and after the injury eliminated any reasonable basis to fail to pay benefits. It therefore assessed penalties of $2,000 for failure to provide medical benefits and $2,000 for failure to pay TTD benefits, and an attorney fee of $7,000.
 

 St. Francis has appealed, raising two assignments of error.
 

 Discussion: Finding of Work-Related Injury
 

 By its first assignment, St. Francis urges the WCJ erred in finding that Ms. Dugan sustained an on-the-job injury. St. Francis concedes that the comp statute is to be construed liberally in favor of the claimant and that manifest error review applies. However, it contends that Ms. Dugan had a long history of serious back injuries, most of which she recalled in great |7detail and precisely as to date, while the instant one is simply suspicious, given that she could not identify a precise incident or date. It also contends that Ms. Dugan never reported an accident to her supervisors, healthcare providers or insurer, and in fact repeatedly denied any accident, all of which cast grave doubt on her claim. It concludes that Ms. Dugan’s credibility was so impaired that the only reasonable view would be that her present condition is merely a continuation of her numerous prior back injuries.
 

 Ms. Dugan responds that the WCJ’s finding of a work-related injury was reasonable and not plainly wrong. Downplaying her medical history, she urges that nothing seriously discredited her account of an accident, and that the description of her current disability, corroborated by her husband and by Dr. Ferrer, fully supported the finding that whatever happened in the final days of her work at St. Francis was new and disabling.
 
 Stevens v. Wal-Mart Stores,
 
 27,977 (La.App. 2 Cir. 11/1/95), 663 So.2d 543. She asks this court to affirm.
 

 A workers’ compensation claimant must prove by a preponderance of the evidence that she received “personal injury by accident arising out of and in the course of’ her employment. La. R.S. 23:1031 A;
 
 Buxton v. Iowa Police Dept.,
 
 2009-0520 (La.10/20/09), 23 So.3d 275. Although the workers’ compensation law is liberally construed in favor of coverage, the claimant’s burden of proving an accident is not relaxed; she must prove by a preponderance of the evidence that an accident occurred.
 
 McLin v. Industrial Specialty Contractors Inc.,
 
 2002-1539 (La.7/2/03), 851 So.2d 1135;
 
 Sheppard v. Isle of Capri,
 
 40,048 (La.App. 2 Cir. 8/17/05), 909 So.2d 699.
 

 A claimant’s testimony alone may be sufficient to establish an accident provided that “(1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the woi'ker’s testimony is corroborated by the circumstances following the alleged incident.”
 
 Bruno v. Harbert Int'l Inc.,
 
 593 So.2d 357 (La.1992). In determining whether the
 
 Bruno
 
 elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) family and friends testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries.
 
 Sheppard v. Isle of Capri, supra;
 
 13 H. Alston Johnson III, Workers’ Compensation Law & Practice (La. Civil Law Treatise) § 253 (4th ed.2002); 1 Denis Paul Juge, Louisiana
 
 *1163
 
 Workers’ Compensation, § 8:1 (2d ed.2002).
 

 Factual findings in workers’ compensation cases are subject to the manifest error rule.
 
 Buxton v. Iowa Police Dept., supra.
 
 Under this rule, the reviewing court does not decide whether the factfin-der was right or wrong, but only whether its findings are reasonable.
 
 Id.
 
 Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be decided by the WCJ.
 
 Id.
 
 When there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong.
 
 Winford v. Conerly Corp.,
 
 2004-1278 (La.3/11/05), 897 So.2d 560;
 
 Sheppard v. Isle of Capri, supra.
 

 19Ms. Dugan’s testimony painted an ambiguous picture, as she initially denied suffering a work-related injury, gave inconsistent medical histories and, admittedly, had a serious history of back injuries. Nevertheless, her experience with back pain may have led her to believe that this injury, like the earlier ones, would resolve soon; this would explain her delay in reporting it. Notably, she has not worked since this incident, and her husband confirmed that she is now “bent” and unable to do most things. The decisive evidence was Dr. Ferrer’s reading of the MRI taken on May 26, 2008. He found a herniation at L4-5 which he called “recent” because it showed no calcification, consistent with lifting a heavy patient and likely to produce unbearable pain. These findings all correspond with Ms. Dugan’s testimony. Moreover, the MRI showed degenerative disc disease at L5-S1, consistent with the medical history that Ms. Dugan did
 
 not
 
 provide to Dr. Ferrer. Despite all the credibility problems, the WCJ was not plainly wrong to find that Ms. Dugan sustained a new and disabling injury while working at St. Francis. The finding of a compensable injury and award of TTD will be affirmed.
 

 This assignment of error lacks merit.
 

 Penalties and Attorney Fees
 

 By its second assignment of error, St. Francis urges the WCJ erred in assessing penalties and attorney fees without any reasonable basis. It contends that when there is a serious defense presented in good faith, the statutory penalty and attorney fee are inappropriate.
 
 Johnson v. Fidelity & Cas. Co. of N.Y.,
 
 42,714 (La.App. 2 Cir. 5/5/93), 618 So.2d 651. It asserts that Ms. Dugan’s repeated denial that any work-related injury occurred fully justified the failure to begin paying benefits. It requests a complete reversal of these awards.
 

 Ms. Dugan responds that the penalties and attorney fee were proper in that St. Francis merely argued that she failed to state the correct date of her injury, and this did not reasonably controvert her claim, for which the evidence easily proved a new and disabling injury. She submits that these awards should be affirmed. By answer to appeal, she contends that WCJ erred in awarding an attorney fee of only $7,000 instead of the $8,480 reflected in counsel’s statement, and requests an additional $3,000 fee for handling the appeal.
 

 Failure to provide payment of benefits will result in a penalty and attorney fee “unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201 F(2);
 
 McCarroll v. Airport Shuttle Inc.,
 
 2000-1123 (La.11/28/00, 773 So.2d 694);
 
 J.P. Morgan Chase v. Louis,
 
 44,309 (La.App. 2 Cir. 5/13/09), 12 So.3d 440. The phrase “reasonably controvert” means that the defendant must have “some valid reason or evidence on which to base his denial of benefits.”
 
 Brown v. Tex-LA
 
 
 *1164
 

 Cartage Inc.,
 
 98-1063 (La.12/1/98), 721 So.2d 885;
 
 J.P. Morgan Chase v. Louis, supra.
 
 Awards of penalties and attorney fees in compensation cases are essentially penal, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers.
 
 Trahan v. Coca Cola Bottling Co.,
 
 2004-0100 (La.3/2/05), 894 So.2d 1096;
 
 Langley v. Petro Star Corp. of
 
 La., 2001-0198 (La.6/29/01), 792 So.2d 721. Although the benefits in the Workers’ Compensation Act are to be liberally construed, penal statutes are strictly construed.
 
 Trahan v. Coca Cola Bottling Co., supra; Langley v. Petro Star Corp. of La., supra.
 
 Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits; the mere fact that an employer loses a disputed claim is not determinative.
 
 J.E. Merit Constructors Inc. v. Hickman,
 
 2000-0943 (La.1/17/01), 776 So.2d 435;
 
 J.P. Morgan Chase v. Louis, supra.
 

 In penalizing St. Francis, the WCJ focused on one fact only, the comparison between Ms. Dugan’s condition before and after the incident. The WCJ completely ignored the substantial defenses to the claim. St. Francis investigated and found that Ms. Dugan never reported a work-related injury to any coworker or supervisor, and explicitly denied such to Ms. Owens and Ms. Downey. Then St. Francis found that Ms. Dugan had a catalogue of prior back injuries, most of which produced symptoms strikingly similar to her current complaints. Still further, St. Francis showed that Ms. Dugan was literally “all over the board” in reporting to healthcare providers when her current condition actually began. Most tellingly, Ms. Dugan maintained, in her disputed claim and until the second day of trial, the her injury occurred on a date which time card records conclusively showed
 
 she was not even at work
 
 If the WCJ had deigned to consult these facts, it would have inevitably concluded that St. Francis’s failure to pay had nothing to do with “indifference and undesirable conduct.”
 

 112This record easily shows that St. Francis had more than reasonable grounds to suspect that Ms. Dugan’s injuries predated her employment at St. Francis, in light of her serious medical history and inconsistent reports to coworkers and healthcare providers. The award of penalties and an attorney fee was an abuse of discretion and will be reversed. A fortiori, the request for additional attorney fees cannot be sustained.
 

 This assignment of error has merit. The award of penalties and attorney fees is reversed, and the request for additional attorney fees is denied.
 

 Legal Interest and Court Costs
 

 By her answer to appeal, Ms. Du-gan also contends the WCJ erred in failing to award legal interest and court costs. In support, she cites La. C.C.P. art. 1921, which provides for legal interest “as prayed for or as provided by law.” She requests an award of legal interest from date of judicial demand, and legal interest on the award of penalties and attorney fees from date of judgment.
 

 Any compensation awarded and all payments thereof “shall bear judicial interest from the date compensation was due until the date of satisfaction.” La. R.S. 23:1201.3 A;
 
 Trahan v. Turner Industries,
 
 2008-704 (La.App. 3 Cir. 12/10/08), 999 So.2d 268. The judgment is silent as to legal interest; it will be amended to provide for legal interest from the date compensation was due until the date of satisfaction.
 

 Further, the judgment explicitly states, “St. Francis Medical Center is hereby cast with all costs of these proceedings,” so the contention that the [ ,3WCJ erred in failing
 
 *1165
 
 to assess costs is plainly without merit. Finally, even though statutory attorney fees are subject to postjudgment interest,
 
 Sharbono v. Steve Lang & Son Loggers,
 
 97-0110 (La.7/1/97), 696 So.2d 1382, 79 A.L.R. 5th 733, our previous finding that St. Francis reasonably controverted the claim and is not liable for penalties and attorney fees under R.S. 23:1201 F(2) obviates any consideration of this claim.
 

 Conclusion
 

 For the reasons expressed, the judgment is affirmed insofar as it finds that Ms. Dugan sustained a work-related injury and awarded her TTD, medical benefits and incidental expenses. The judgment is amended to award judicial interest from the date compensation was due until the date of satisfaction. The judgment is reversed insofar as it imposed penalties and an attorney fee, and the request for an additional attorney fee is denied. Each side is to bear its own appellate costs. La. C.C.P. art. 1920.
 

 AFFIRMED IN PART, AMENDED, AND REVERSED IN PART.