WILLIAMS, J.
| TClaimant, Donnie D. Scott, appeals the workers’ compensation judge’s decision, finding that claimant failed to meet his burden of proving that he had suffered two compensable work-related injuries. For the following reasons, we affirm.
FACTS
Claimant was hired by Super One Foods (“Super One”) on July 31, 2002 as a “perishable manager.” His duties including ordering perishable goods, unloading trucks and stocking the store’s shelves with perishable goods. Claimant worked the “graveyard” shift, from approximately 10:00 p.m. until approximately 7:00 a.m. He alleged that he injured his back at work on two separate occasions — on November 19, 2005 and in January 2006.[1] *1135 Claimant stated that he verbally reported both injuries to Ronnie Turner, the store’s grocery manager; however, no written injury/accident report was completed after either incident. Claimant testified that despite being in pain, he completed the remaining hours of his shifts on the nights of the injuries and did not miss any days from work thereafter.
On January 17, 2006, claimant presented to the Shreveport Family Medicine Clinic complaining of back pain. He informed the physician on duty that he had been experiencing back pain for approximately three weeks; however, he stated that the pain was not the result of any trauma. Claimant returned to the clinic on January 31, 2006 and was treated by Dr. |2Floyd James, an internal medicine physician. During that visit, Dr. James noted that claimant reported that he “may have lifted something” and “felt a pop” in his back. Dr. James also noted that claimant had undergone “back surgery eight years ago.” He referred claimant to Dr. Pierce Nun-ley, the orthopedic surgeon who had performed an IDET (“intradiscal electrother-mal therapy”) procedure on claimant’s back in 2000.[2]
On February 1, 2006, claimant completed a report of injury at Super One. In the report, claimant stated that on November 19, 2005, he was unloading perishable items from a truck when he “stepped back and twisted” and felt a “sharp pain in [his] lower back radiating to [his] thigh and groin area.” Claimant also reported that on January 10, 2006, he slipped and hit his back against a ramp as he was unloading a truck.
Eddie Crawford was the risk manager for Brookshire Grocery Company, Super One’s self-insured parent company. Crawford testified that he was not aware of claimant’s alleged injuries until March 2006, when he was contacted by Dr. Nun-ley’s office for authorization to provide medical treatment to claimant. Crawford stated that he initiated an investigation and obtained claimant’s medical records. He learned that claimant had an extensive history of back injuries. Crawford discovered that claimant had been treated by Dr. Nunley for various back ailments from 1999 through 2002. Crawford also learned that Dr. Nunley had performed an IDET procedure on claimant’s back on August 15, 2000. When claimant |3continued to complain of back pain, Dr. Nunley had recommended that claimant undergo a lumbar “360 fusion” in November 2000.[3]
Crawford also interviewed some of Super One’s employees and discovered that claimant had been in a car accident in January 2006 and had told at least one coworker that he had injured his back in that accident. Subsequently, Crawford obtained additional medical records from Willis Knighton Medical Center and learned that claimant had been treated there for back pain since 1991. Crawford spoke to claimant, who stated that his previous back pain was “cured” after the IDET procedure in 2000. However, claimant’s medical records revealed that statement was untrue, as claimant continued to report to his physicians that his pain had not abated.
*1136 Additionally, Crawford examined employee time cards and learned that Ronnie Turner, the grocery manager to whom claimant allegedly reported both accidents, was not working on November 19, 2005, the date of the first alleged injury. Claimant had alleged that Marvel Taylor[4] witnessed both the November and January accidents/injuries. Crawford examined Taylor’s “witness statement” and learned that Taylor described the injury claimant allegedly sustained in November 2005; however, Taylor did not mention the alleged January 2006 injury. Crawford also discovered that Taylor’s time card revealed that he was not working on the date claimant initially stated that the second injury occurred. Due to | ¿inconsistencies in claimant’s statements and claimant’s extensive history of back pain, Crawford denied his claim for workers’ compensation benefits.
Claimant continued to work until April 2006. On April 13, 2006, he filed a disputed claim for compensation. Claimant alleged that he injured his “low back” at work on November 19, 2005 and “about” January 15, 2006. On January 28, 2007, claimant moved for partial summary judgment, seeking a judgment declaring that he had suffered two compensable work-related injuries. The motion was denied on April 9, 2007.[5]
This matter was tried for five days over a six-month period, and the WCJ took the matter under advisement. During the post-trial briefing period, Super One received additional medical reports and discovered that after undergoing a lumbar fusion at LSU Health Sciences Center (“LSU”) on August 17, 2007, claimant reported that he was “dropped” by hospital personnel as he was entering his car after being discharged from the hospital. Claimant informed his surgeon, Dr. J. Eric Bicknell, that he was suffering from “unrelenting back pain” as a result of that incident. However, claimant never mentioned the hospital incident during the workers’ compensation trial. Super One filed a motion to reopen the record. The WCJ granted the motion and allowed Super One to introduce into evidence claimant’s LSU medical records and Dr. Bicknell’s post-trial | ¿deposition.
The WCJ denied the claim for workers’ compensation benefits, finding that claimant failed to meet his burden of proving that a work-related accident had occurred. The WCJ expressly found that the testimony provided by claimant was not credible. Claimant appeals.
DISCUSSION
Claimant contends the WCJ erred in dismissing his claim for workers’ compensation benefits. Claimant admits that he had an extensive history of back injuries. However, he argues that he had not been treated for back-related issues since 2002, prior to sustaining the two work- *1137 related injuries at issue herein. Therefore, claimant maintains that the testimony and medical evidence were sufficient to show, at the very least, that the work-related incidents aggravated a preexisting condition.
An employee is entitled to workers’ compensation benefits if he receives a personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A); McLin v. Industrial Specialty Contractors, Inc., 2002-1539 (La.7/2/03), 851 So.2d 1135. A workers’ compensation claimant has the burden of proving, by a preponderance of the evidence, that the disability suffered is related to an on-the-job injury. Modicue v. Graphic Packaging, 44,049 (La.App.2d Cir.2/25/09), 4 So.3d 968; Taylor v. Columbian Chemicals, 32,411 (La.App.2d Cir.10/27/99), 744 So.2d 704. The causal connection between the disability and the on-the-job injury can be established when the employee proves that before the accident he was in good health, but commencing with the accident the ] ^symptoms of the disabling condition appeared. See, Poland v. Kroger, No. 404, 32,576 (La.App.2d Cir. 12/8/99), 747 So.2d 711, writ denied, 2000-0583 (La.4/7/00), 759 So.2d 764.
A claimant’s own testimony may be sufficient to prove causation, provided (1) no other evidence discredits or casts serious doubt upon the claimant’s version of the incident, and (2) the claimant’s testimony is corroborated by circumstances surrounding the alleged incident. Bruno v. Harbert Int’l, Inc., 593 So.2d 357 (La.1992); Dugan v. St. Francis Medical Center, 45,149 (La.App.2d Cir.4/14/10), 34 So.3d 1157. In determining whether the Bruno elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) family and friends testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. Dugan, supra; Sheppard v. Isle of Capri, 40,048 (La.App.2d Cir.8/17/05), 909 So.2d 699; Blair v. Wal-Mart Stores Inc., 2001-2211 (La.App. 4th Cir.5/15/02), 818 So.2d 1042, citing 13 H. Alston Johnson III, Workers’ Compensation Law & Practice (La. Civil Law Treatise) § 253 (4th ed.2002); 1 Denis Paul Juge, Louisiana Workers’ Compensation, § 8:1 (2d ed.2002).
The question of whether a claimant is entitled to compensation benefits is a question of fact, and a WCJ’s determination may not be disturbed on appeal absent manifest error. Morrison v. First Baptist Church of West Monroe, 44,189 (La.App.2d Cir.4/8/09), 7 So.3d 873; Jones v. Hollywood Casino Shreveport, 42,819 (La.App.2d Cir.12/5/07), 972 So.2d 1189. Under the manifest error rule, the reviewing court does not decide |7whether the factfinder was right or wrong, but only whether its findings are reasonable. Winford v. Conerly Corp., 2004-1278 (La.3/11/05), 897 So.2d 560, citing Stobart v. State, 92-1328 (La.4/12/93), 617 So.2d 880; Sheppard, supra. When there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Id. Thus, even when the appellate court is convinced it would have weighed the evidence differently had it been sitting as trier of fact, the court of appeal may not reverse if the factfinder’s findings are reasonable in light of the record reviewed in its entirety. Id.
In the instant case, claimant testified that the first injury occurred in November 2005, “before Thanksgiving.” He stated that he had finished unloading a truck and was in the process of separating meat, dairy and produce items. Claimant testified:
*1138 I reached up to grab a box of chitlins, the handle broke as I was coming down, so I slipped. And when I slipped I turned and I was trying not to drop the chitlins. So I put them down on the pallet and I just hollered, you know.
Claimant further testified that he told Marvel Taylor, a fellow-employee, “Man, I think I pulled something.... It hurt like crap.... ” Claimant stated that he continued to work and later reported the incident to Ronnie Turner, the grocery manager on duty that night. Claimant testified:
I told [Turner] I had, I think I had twisted my back when I was unloading the meat, the chitlins thing. I told him, I say, I was pulling on it. I say, I twisted it. He said, you all right. I said, man, it hurts like, you know what I’m saying. He said, do you think you’ll make it through the night because they didn’t have anybody to replace me. I told him yes, I think I’ll be all right, you know, I guess
and I continued to work.
[[Image here]]
| «Claimant stated that he continued to work, night after night. He stated, “I was sore, but I was still doing my job though.”
Claimant also testified that the second incident occurred “either right before New Year’s or right after New Year’s.” He stated that he was unloading frozen products from a truck surrounded by ice cream and popsicles stacked on a wooden pallet with “plastic wrapped around it.” Claimant testified that his “feet got tangled up in the plastic and I was falling back ... [b]ut when I fell back, I hit the back plate and I came over the back plate.” He stated that he continued to work and reported the incident to Turner.
Claimant testified that he decided to seek medical attention after the second incident because he “kept hurting.” He stated that he did not inform the doctor that it was a work-related injury because “I was still thinking it was a pulled muscle.... I told the doctor I think I pulled a muscle.” Claimant also testified that he did not tell the physician that he had been injured on the job “because you have to have the papers to show it was a workman’s comp case. I didn’t have any paperwork.”
Claimant admitted that he had been involved in an automobile accident in December 2005, after the first alleged work-related injury, but prior to the second alleged work-related injury. However, he maintained that he was not injured in the automobile accident.
Marvel Taylor testified that he worked for Super One as a “perishable clerk” from 2004-2007. Taylor testified that he and claimant were unloading items one night “around Thanksgiving,” when he heard claimant | ¡/‘scream oh s — t.”[6] He stated that he approached claimant and asked him if he was all right. He testified that claimant told him that he had “probably pulled a muscle or something in his back or something.” Taylor also testified that he and claimant “went outside [and] told [Ronnie Turner] that [claimant] hurt his back.” Taylor further testified that claimant continued to work but he walked “slow with a limp” for the reminder of the night. Taylor stated that the following morning, he and claimant reported the injury to Eric Bean, the store manager. Taylor also testified that claimant’s second injury occurred “after New Year’s, day after New *1139 Year’s.” Taylor stated that he was not scheduled to work that night, but he reported to work because claimant “called me in.” He testified that he and claimant were unloading a truck when claimant fell and “hurt his back again.” Taylor further stated that claimant reported the injury to “whichever on duty manager it was.”
Ronnie Turner testified that claimant did not report any work-related injuries to him, and he never spoke to claimant about an injury in November 2005. Turner’s attendance records revealed that he was not working on November 19, 2005, the date of the alleged first injury. Turner testified that he noticed that claimant seemed to be in pain “after the first of the year.” Turner stated:
I saw he was in the perishable department one night and I thought, he looked like he was in pain. And I walked over to him and I asked him. I said, ‘Donnie, are you all right, man?’ And he said, well his back was bothering | Tnhim. And his shift continued throughout the night and he said he was going to go home and rest. And that’s how I found out about it.
Turner also testified that “about a week or so later,” he learned from Taylor that claimant “supposedly hurt his back on the job.”
Tony Edwards testified that he was employed by Super One as grocery “stocker” and he worked the “graveyard” shift with claimant and Taylor. Edwards testified that claimant occasionally came to work complaining of back pain. He also testified that Taylor was not working the night claimant sustained the second injury. Edwards testified that claimant “hit his back on a pallet” and did not report the injury to anyone. Edwards stated:
I asked Mr. Scott [if] he [was] going to report it to Mr. Turner, because Mr. Turner was on duty that night. And he said, no, he was all right. And he kept working. Plus we both that day, before we came to work, we both were drinking.
* * *
And then after he hurt himself he did not report it because he had alcohol on his breath. And then he came back to work the next night. Me and him supposed to work dairy again. And he brung (sic) Marvel in to help him finish the dairy that nightf.]
Eric Bean, the store’s assistant manager, also testified at trial. He testified that when he learned about the alleged accidents, he instructed claimant and Taylor “to make sure they had gotten with a manager that would have been on duty at the time, because I wasn’t there, been a witness to it.” Bean also testified claimant and Taylor completed the report in his office at the store.[7]
|nTammy Caston, who worked with claimant at a different Super One store, also testified. She stated that claimant came into the store where she worked and “he was limping.” Caston testified that claimant told her “he had hurt his back on his, he said T hurt myself with the job.’ ”
Claimant’s medical records detail his extensive history of back pain, dating back to the early 1990s. The medical records revealed that claimant has presented to physicians and emergency rooms all over the Shreveport area, reporting back pain due to various work-related accidents, as well as a number of motor-vehicle accidents. As stated above, claimant underwent back surgery at LSU in 2007, after which he *1140 reported that he further injured his back when he was “dropped” by the hospital staff.
After hearing the testimony and reviewing the medical records, the WCJ stated:
The [claimant’s] testimony concerning the accident is not supported by the medical evidence or the testimony of the witnesses. The Court finds that the testimony of Marvelle Taylor and Tammy Caston was not reliable in helping prove the occurrence of a work-related accident. Additionally, the record is replete with instances that call into question the credibility of the claimant. During the trial, [the claimant] was asked to discuss all accidents and injuries that he suffered. Although many accidents and injuries were discussed, [the claimant] failed to mention the facts that were provided in the post-trial deposition of J. Eric Bicknell, M.D. This information revealed another example of claimant’s lack of credibility. The record reflects that claimant fell, or was dropped, while leaving the hospital after a surgery in August of 2007. Significant to this Court is the fact that this injury, although revealed as significant in the medical records, was not mentioned by claimant at trial.
112Super One presented ample evidence which discredited and cast serious doubt upon the credibility of the testimony of claimant and his witnesses. The WCJ, as the trier-of-fact, heard the testimony and observed the demeanor of the witnesses. The WCJ expressly concluded that claimant, Taylor and Caston were not credible witnesses. We find no manifest error in the WCJ’s findings.
Claimant initially alleged that the first injury occurred on November 19, 2005. That date was listed as the date of injury on the accident/injury report and in claimant’s disputed claim for workers’ compensation. Claimant also stipulated in his pretrial statement that he was injured on that date. Subsequently — perhaps after learning that Ronnie Turner, the grocery manager to whom claimant asserted that he initially reported the injury, was not working on that date — claimant has since maintained that he does not know the date of the first alleged injury. Claimant has provided several dates with regard to the date of the second alleged incident.
When claimant presented to the Shreveport Family Medicine Clinic in January of 2006, he specifically denied suffering a work-related injury. When he presented to Dr. Nunley’s office in February 2006, the physician’s report stated that claimant was “not connecting this to a work injury at this time. He does report this is the same pain he had prior to his IDET and prior to the lifting accident in November 2005.” When asked to explain why he initially told the physicians that he had not been injured at work, claimant stated, ‘You have to have the papers to show it was a workman’s comp case. I didn’t have any paperwork.” At one point, claimant testified h3that he did not tell the physicians that he had sustained a work-related injury because he was “still thinking it was a pulled muscle.”
Claimant testified briefly about his post-surgery condition, and reported that his back pain “comes and goes.” Claimant testified about an incident in which he “slipped” in the shower at home, but he did not mention a “fall” he had experienced at LSU following his surgery in 2007.[8] He testified that he did not know *1141 what was causing his current pain, stating, “I don’t know what it is — I don’t know. I don’t know nothing. Only thing I know is they took more xrays and I’m just waiting to see what the problem is. I don’t know.”[9]
When questioned on cross-examination about the various work-related injuries and motor-vehicle accidents, claimant was evasive and, at times, answered in the form of a question. The WCJ repeatedly admonished claimant and instructed him that he was required to answer questions posed by opposing counsel. While other witnesses were testifying, the WCJ admonished claimant about making gestures and certain facial expressions.
Taylor reported that he had witnessed both accidents, but failed to mention the second alleged accident in the report of injury. Taylor testified 114at trial that he accompanied claimant when both incidents were reported to Turner. However, as noted above, Turner’s employee records reveal that he was not working the night of the first alleged incident. Additionally, Taylor’s testimony with regard to the second alleged injury was contradicted by Edwards’ testimony. Edwards testified that he, not Taylor, was working with claimant on the night claimant allegedly sustained the second injury. Taylor also testified that both he and claimant worked seven nights a week. However, the time and attendance records contradicted this testimony. Taylor explained the discrepancy by testifying that he and claimant often worked “off the clock” and were not always paid for their labor.
Caston admittedly did not witness either of the alleged incidents. She testified that she and claimant were friends and had discussed her impending testimony days before the trial.
We have conducted a thorough review of this entire record, including the testimony and claimant’s medical records. We conclude that the WCJ did not commit manifest error in finding that claimant failed to prove that he sustained a work-related injury.
CONCLUSION
For the foregoing reasons, we affirm the WCJ’s ruling dismissing claimant’s workers’ compensation claim. Costs of this appeal are assessed to claimant, Donnie D. Scott.
AFFIRMED.

. The date of the alleged second injury remains unclear. In the injury report dated February 1, 2006, claimant stated that he injured his back on November 19, 2005 and January 10, 2006. On the disputed claim for compensation, claimant alleged that the second injury occurred "about” January 15, 2006. In claimant’s pretrial statement, he stipulated that the second injury occurred "on or about January 4, 2006.”

. IDET is a procedure by which a small probe or catheter is surgically inserted into a herniated or degenerative disc. The probe delivers precise levels of heat into the tissues within the disc, eliminating painful nerve endings and blood vessels, which, in turn, relieves pain.

. Claimant underwent a lumbar 360 fusion in August 2007 at LSU Health Sciences Center in Shreveport.

. At some places in the record, Taylor's name is spelled "Marvelle Taylor.” Also, some of the witnesses refer to Taylor as "Ben.” Taylor testified that "Ben” is his nickname.

. On April 20, 2007, claimant filed a "Petition for Overtime Wages, Petition for Damages Arising From Failure to Pay Overtime Wages, Continuing Intentional Tort, Intentional Deprivation of Workers Compensation Benefits, Breach of Employment Contract, Retaliatory Termination, [and] Intentional Deprivation of Medical Benefits Under Group Medical Plan and Short Term Disability Benefits Plan.” The suit was filed in the 26th Judicial District Court in Bossier Parish, Louisiana. Named as defendants were Super One, Brookshire Grocery Company, Crawford, Turner, Eric Beene, store director, and Mark McGrew, assistant store director. According to statements made during the trial, that lawsuit is still pending and is not the subject of this appeal.

. Taylor was unable to recall the date of the injury, stating, “I can't remember if it was the day after Thanksgiving, day before Thanksgiving. It was somewhere around Thanksgiving, that week around Thanksgiving.”

. Bean’s testimony contradicts the testimony of claimant and his wife, who both testified that the report was completed by claimant’s wife at their home.

. According to the records from LSU, a hospital employee was assisting claimant "from wheelchair to car” when claimant "plunged over into car seat and then slouched to knees.” Claimant was then transported to the hospital's emergency room with com *1141 plaints of back pain. Claimant reported to the physician that he was "dropped” and landed on his "buttocks, causing severe pain.”

. Additionally, claimant and his wife both adamantly denied that claimant had ever been examined by a pain specialist or psychologist. However, claimant’s medical records reveal that claimant was evaluated by a pain specialist, who opined that claimant had "complex psychosocial issues [and] ongoing litigation with evidence of symptom magnification.” Claimant was referred to Dr. Thomas Staats for a "full psychological workup.”